ASSOCIATION OF WESTERN PULP AND PAPER WORKERS and Local No. 1, Association of Western Pulp and Paper Workers, Plaintiff,

v.

BOISE CASCADE CORPORATION, a Delaware corporation, Defendant.

Civ. No. 86–873–PA.

United States District Court, D. Oregon.

Sept. 11, 1986.

Robert A. Bennett, Bennett, Hartman, Tauman & Reynolds, Portland, Or., for plaintiff.

Paul T. Fortino, Calvin L. Keith, Perkins and Coie, Portland, Or., Stephen M. Kite-Powell, John T. Shalberg, Boise Cascade Corp., Boise, Idaho, for defendant.

## OPINION

PANNER, Chief Judge.

Plaintiff Association of Western Pulp and Paper Workers and Local No. 1 of the Association (collectively referred to as Union) seek injunctive relief against defendant Boise Cascade Corporation (Company), which unilaterally imposed a drug testing program on its employees. After trial to the court, I find for the Company.

The Union originally filed this action in state court, contending the program violated state statutes forbidding discrimination against workers who file compensation claims and the giving of breathalyzers to employees without cause and consent. The Company removed the action to federal court, and moved to dismiss or for summary judgment. The Company contends that the collective bargaining agreement controls, and that this requires arbitration. Alternatively, the Company contends that the Union's state claims were preempted by federal labor law.

The parties agreed that these motions, as well as the Union's preliminary injunction motion, could be heard together. At the hearing, they further agreed that their evidentiary submissions were complete and that the court could proceed to a trial of the merits.

I find for the Company. Plaintiff's motion for preliminary injunction is denied as moot, and the action is dismissed.

## STANDARDS

Because the Union is the plaintiff in this action, it has the burden of proof, which it must meet by a preponderance of the evidence. The parties agree, however, that there are no differences as to material facts.

## FACTS

The Company operates a paper mill in St. Helens, Oregon. Workers at the mill work with heavy moving equipment, pressurized vessels, and hazardous chemicals. Injuries are common.

To address this problem, the Company unilaterally implemented a drug and alcohol testing program at the mill. The Union represents workers there. When the Union learned a program might be used, it asked to play a role in developing one. The Company refused to give the Union a significant role.

Before the program began, the Company sent mill workers a memorandum, which describes the program as follows. Three groups of employees are subject to testing. First, if a supervisor has reasonable cause to believe that an employee is "under the influence" of alcohol or illegal drugs, that employee must submit to testing. Second, if an employee suffers an on-the-job injury that requires medical attention beyond first aid, the employee must submit. Third, all other employees involved in the accident must also submit.

If testing shows illegal drugs or alcohol above .08%, the employee is subject to discipline, which may include discharge. If an employee refuses to submit to the tests, he is also subject to discipline, which will include immediate suspension and may include discharge.

After this action was filed, the Company filed affidavits stating that employees involved in accidents would be subject to discipline for refusing drug testing, but not for refusing alcohol testing unless a supervisor had reasonable cause that the employee was under the influence. The Company then informed employees of this. While the original memorandum sent to employees did not adequately explain this, the Company's attorney contends this was due only to "poor drafting."

On June 1, 1986, the Company implemented the program. Since then, Company supervisors have demanded that several employees involved in accidents submit to testing, or face discipline. The testing has

been positive in only one instance, when marijuana was detected in one employee.

The testing has been a source of friction at the mill. There is evidence that Company medical staff have delayed providing nonemergency medical treatment until injured employees sign the consent and release form. On one occasion, an employee who reported an injury on a workers' compensation form attempted to retrieve it when told he would be required to submit to testing. When another employee stated he would sign the form only under the threat of discipline, a Company nurse responded that testing was not necessary because she did not believe he had been drinking.

The Company has unilaterally implemented other work rules in the past. The parties agree that pursuant to a 1972 arbitration decision, the company has the right to introduce work rules that are consistent with the labor agreement. The Union may challenge the reasonableness of the rules through the agreement's grievance process.

The Union has filed a grievance challenging the program, which will be heard by an arbitrator. The Union has also filed an unfair labor practice charge with the National Labor Relations Board (NLRB). Both matters are pending.

## DISCUSSION

The Union contends that the program violates three Oregon statutory provisions. I disagree. The Union also contends that the program violates its members' privacy rights. Those common law rights are preempted by federal labor law. The action should therefore be dismissed.

1. *The Program Does Not Violate Oregon's Worker's Compensation Statute.*

■ The Union contends that the program violates O.R.S. 659.410, which forbids employers from discriminating against a worker as to hire, tenure, or employment conditions "because the workman has applied for benefits or invoked or utilized the procedures" in the statute. The Union argues that the program will encourage workers to suffer in silence and not file injury reports. Because these reports are a prerequisite to a benefits application, the Union contends that the program discriminates against workers who would like to apply.

The program does not violate the statute. Workers are disciplined not because they apply for benefits or fill out accident reports, but because they either refuse to take the test, or fail it.

■ The Union also contends that the program violates O.R.S. 659.410, which requires that a worker who sustains a compensable injury be reinstated to her former position upon demand, provided the position is available and the worker is able to perform the position. The Union argues that injured workers who wish to return to work will not be allowed to return if they fail the test or refuse to take it.

The program does not violate this provision. If a worker is properly discharged after an accident because she violated a rule, an employer is not required to reinstate her when she recovers.

2. *The Program Does Not Violate Oregon's Breathalyzer Statute.*

■ The Union also contends the program violates O.R.S. 659.227, which forbids employers from "subject[ing], directly or indirectly, any employee or prospective employee to any breathalyzer test...." O.R.S. 659.227(1); *see also* O.R.S. 659.225. The statute allows employers to require consent as a condition of employment.

(5) Nothing in subsection (1) of this section shall be construed to prohibit the administration of a breathalyzer test to an individual if the individual consents to the tests. If the employer has reasonable grounds to believe that the individual is under the influence of intoxicating liquor, the employer may require, as a condition for employment or continuation of employment, the administration of a

blood alcohol content test by a third party or a breathalyzer test....

O.R.S. 659.227(5).

The Company complies with the statute. Provided the Company has reasonable cause to believe that a worker is under the influence of alcohol, it may require that he consent or face discipline. Employees involved in accidents will not be tested for alcohol without cause and consent.

The Union contends the alcohol testing violates the breathalyzer statute because there are no objective standards to guide supervisors in establishing reasonable cause that a worker is "under the influence." The Company has, however, instructed supervisors to look for alcohol on the breath, lapses in performance, inability to appropriately respond to questions, and physical symptoms of alcohol or drug influence. Employees who are tested are considered "under the influence" if their blood alcohol exceeds .08%, the same amount used in Oregon to establish driving under the influence.

The program does not violate Oregon's worker's compensation or breathalyzer statutes. Because the statutes were not violated, I need not reach the Company's preemption, standing, and other arguments.

### 3. *The Union's Privacy Claim Is Preempted.*

■ The Union also challenges the drug testing of all employees involved in accidents requiring medical attention. Alcohol testing of these employees is not required unless there is reasonable cause to believe that the employee is under the influence of alcohol. This conforms with the breathalyzer statute. By contrast, the program allows drug testing of all employees involved in accidents, with or without cause.

The breathalyzer statute does not specifically address drug testing. The Union contends that even if the statute does not apply, this drug testing provision violates the workers' common law privacy rights. These rights are based in the invasion of privacy tort, which is preempted by federal labor law.

The Union's claim amounts to one for breach of contract between an employer and a labor organization, pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Union may not bring a section 301 claim until it exhausts arbitration.

In *Allis Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 the Supreme Court held that section 301 preempted a state common law tort for bad faith handling of an insurance claim. Plaintiff's union and his employer had bargained for insurance coverage. The collective bargaining agreement required arbitration of all disputes concerning coverage. The Court found that the state tort right did not exist independently of the agreement. Thus, the employer and the union could agree to waive or alter the right. Together with section 301, the agreement preempted the state tort. 105 S.Ct. at 1912.

*Lueck* controls this case. The tort right asserted here is not independent of the bargaining agreement. The agreement allows the Company to institute reasonable work rules. The Union may challenge the reasonability of the rules through arbitration. Waiver of the state tort right is appropriate. To establish the tort, a plaintiff must show that the intrusion would be offensive or objectionable to a reasonable person. *Oliver v. Pacific Northwest Bell Telephone Co.,* 53 Or.App. 604, 632 P.2d 1295, 1298, *rev. denied,* 292 Or. 108, 642 P.2d 310 (1981). This standard is essentially the same applied by the arbitrator—whether the rules are reasonable.

Preemption by section 301 is particularly appropriate where there is a need for federal common law to interpret similar contractual provisions. This avoids interpretations that differ from state to state. *Lueck,* 105 S.Ct. at 1910. This need exists here. The nation faces a growing threat from alcohol and drug abuse, which has a direct impact on worker safety. Balancing workers' privacy rights against that threat is another

problem with national dimensions. Certainly it is appropriate that these problems be addressed through work rules, which can be evaluated by arbitrators, and then the courts. When collective bargaining agreements allow employers to establish reasonable rules, uniform laws should be used to determine reasonability.

The state tort is preempted by section 301. Where the collective bargaining agreement requires arbitration, as here, a section 301 claim must be dismissed if the Union has not exhausted arbitration. The Union has failed to do so.

## CONCLUSION

After trial on the merits, the Union's claims are dismissed with prejudice. The Clerk shall enter judgment accordingly.

The Union's motion for preliminary injunction and the Company's motions for dismissal or summary judgment are moot.

This opinion constitutes findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).