UTILITY WORKERS OF AMERICA, LOCAL NO. 246, AFL–CIO; Jeanette Cintron; Alan Rook, Plaintiffs–Appellants, Cross–Appellees,

v.

SOUTHERN CALIFORNIA EDISON COMPANY, et al., Defendants–Appellees, Cross–Appellants.

Nos. 87–5674, 87–5702.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1988.

Decided May 4, 1988.

As Amended Aug. 19, 1988.

Glenn Rothner and Adam Radinsky, Reich, Adell & Crost, Los Angeles, Cal., for plaintiffs-appellants.

Charles R. Kocher, John W. Evans and Mark E. Mikulka, Rosemead, Cal., for defendants-appellees/cross appellants.

Before GOODWIN, WALLACE and ALARCON, Circuit Judges.

GOODWIN, Circuit Judge:

This case requires us to decide whether section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), preempts a union's claim that an employer's unilaterally implemented drug-testing program violates rights guaranteed by the California Constitution.

Utility Workers of America, Local 246, appeals the order dismissing its state constitutional law claims arising out of the implementation of random drug testing of employees by Southern California Edison (SCE) at its San Onofre Nuclear Generating Station. SCE cross-appeals from the district court's refusal to dismiss Local 246's breach of the collective bargaining agreement claim and from its decision to enter a preliminary injunction against random drug testing.[1]

In September 1984, SCE began annual drug-screen urinalysis for all employees seeking "unescorted access" into the security area encompassing the San Onofre plant's nuclear reactors. SCE instituted the drug-testing requirement without prior negotiations with Local 246, the collective bargaining agent for employees at the San Onofre facility. Local 246 filed a grievance asserting that institution of the program

---

1. Appellants ask us to strike portions of appellee's reply brief on the ground that these portions cover subject matter which is beyond the scope of the final brief in a cross-appeal. Although we recognize that the discussion in these portions has peripheral relevance to those matters properly addressed upon cross-appeal, we grant appellants' motion to strike because appellee had ample opportunity to discuss the claims in its opening brief.

violated the collective bargaining agreement.

Local 246 also filed a charge with the National Labor Relations Board (NLRB) alleging that SCE's unilateral implementation of the program constituted an unfair labor practice. The NLRB deferred the unfair labor practice charge to arbitration, and Local 246 failed to pursue that matter further.

Beginning about December 1, 1986, SCE modified its drug-testing program. Under the new system, plant employees—chosen at random by a computer—would be required to produce urine samples for testing on one day's notice. SCE implemented the modifications without first bargaining with Local 246.

On December 8, 1986, Local 246 filed a grievance asserting that SCE violated the collective bargaining agreement by instituting the random drug-testing program without first bargaining in good faith. Local 246 concedes that this grievance now is proceeding in accordance with the grievance-resolution mechanisms created by the collective bargaining agreement.

On December 10, 1986, Local 246 and two plant employees filed an action against SCE in state court, alleging that the drug-testing program violated rights guaranteed under the California Constitution to privacy and freedom from unreasonable searches and seizures. *See* Cal. Const. art. I, § 1 (right to privacy); *id.* art. I, § 13 (prohibition of unreasonable searches and seizures). The complaint also alleged that SCE had violated the collective bargaining agreement and sought injunctive and declaratory relief.

After the state court issued a temporary restraining order enjoining random drug testing, SCE removed the case to federal district court. On February 11, 1987, the district court issued an order dismissing

the state constitutional claims as preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982). The district court also issued a preliminary injunction against implementation of random drug testing, pending resolution of the grievance. Each party has appealed from the part of the order unfavorable to it.

We review de novo the question whether section 301 preempts state law. *See Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 565 (9th Cir.1987). We begin, as always, with the language of section 301:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185(a) (1982).

Section 301 "expresses a federal policy that the substantive law to apply in § 301 cases 'is federal law, which the courts must fashion from the policy of our national labor laws.'" *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (*quoting Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957)). The preemptive force of section 301 "is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, —— U.S. ——, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (*quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)).[2]

Preemption of state-law claims is inappropriate where state causes of action "confer[ ] nonnegotiable state-law rights on

---

**2.** Because section 301 requires courts to create federal law, federal jurisdiction is not barred by the well-pleaded complaint rule, under which a defendant may remove a case based upon federal jurisdiction only where a federal question would appear on the face of the plaintiff's properly pleaded complaint. *See Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112–13, 57 S.Ct.

96, 97–98, 81 L.Ed. 70 (1936). Even if state law would provide a cause of action in the absence of section 301, preemption under section 301 creates an exclusively federal cause of action. *See Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983).

... employees independent of any right established by contract." *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1916.

■ Local 246's constitutional claims are "substantially dependent" upon the analysis of the collective bargaining agreement and they constitute a properly negotiable subject for purposes of collective bargaining. Resolution of the issue whether Local 246 has bargained away its members' claimed constitutional rights must rest upon Articles VI and X.N of the collective bargaining agreement, which recognize SCE's right to manage the plant, to direct the working force, and to implement reasonable safety rules and require their observance. Thus, we find that Local 246's state-law claims cannot be resolved without reference to the collective bargaining agreement and that they should therefore be dismissed as preempted by section 301.

Drug testing does not implicate the sort of "nonnegotiable state-law rights" that preclude preemption under section 301. *See Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912. As Local 246 argued when it filed its charge of unfair labor practices in 1984, an employer's decision to institute a drug-testing program is a proper subject for collective bargaining. The question of drug testing obviously implicates important personal rights. To the best of our knowledge, however, no court has held that the right to be free from drug testing is one

that cannot be negotiated away, and we decline to make such a ruling here.[3]

We reject Local 246's argument that *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 862–63 (9th Cir.1987), *cert. denied,* ── U.S. ──, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), mandates a finding that its claims are not preempted by section 301. The *Paige* court, in holding that section 301 did not preempt a tort action based upon California's OSHA regulations, found that a private right of action was created to enforce this state regulatory scheme, not to regulate the employment relationship. *See id.* at 863. Thus the court held that this private right of action "exists independent of any contractual right." *Id.* Here, however, the constitutional rights claimed by Local 246 pose a "significant threat to the collective bargaining process" and promote no "state interest in protecting the public transcending the employment relationship." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001–02 (9th Cir. 1987) (interpreting *Paige* ). *Paige* therefore is inapplicable to this case.

We also find inapposite our recent decision in *Tellez v. Pacific Gas and Elec. Co.*, 817 F.2d 536, 539–40 (9th Cir.), *cert. denied,* ── U.S. ──, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). *Tellez* held that section 301 does not preempt claims alleging intentional and negligent infliction of emotional distress where the collective bargaining agreement "is silent on working conditions, and vague on disciplinary formalities" so that "examination or interpretation of the agreement would not help to resolve [plaintiff's] claim." *Id.* at 539. Here, by contrast, we have found it necessary to examine the collective bargaining agree-

---

**3.** Our conclusion is not altered by the recent decisions in *Railway Labor Executives' Ass'n v. Burnley*, 839 F.2d 575 (9th Cir.1988), or the companion cases of *Brotherhood of Locomotive Eng'rs v. Burlington N. R.R. Co.*, 838 F.2d 1087 (9th Cir.1988), and 838 F.2d 1102 (9th Cir.1988), *petition for cert. filed*, 56 U.S.L.W. 3720 (April 1, 1988). Although *Burnley's* holding that drug testing of railway employees violated the fourth amendment suggests the importance of the rights asserted here, *see Burnley*, 839 F.2d at 579–82, this determination in no way suggests that such rights are nonnegotiable; the prevalence of collective bargaining agreements au-

thorizing searches of employees' possessions strongly suggests that drug-testing provisions would be negotiable. The panel's finding in the two *Burlington Northern* cases that the dispute was major rested not upon the importance of the issue but upon the fact that the issue was "neither contemplated nor arguably covered" by a collective bargaining agreement. *Burlington Northern,* at 1091 (*quoting International Ass'n of Machinists v. Aloha Airlines, Inc.*, 776 F.2d 812, 816 (9th Cir.1985)). These recent cases therefore do not hold that nonnegotiable constitutional rights preclude unions from bargaining over employer drug-testing programs.

ment to determine whether it has been breached.

We reach the same result as the other courts that have considered the question whether section 301 preempts state-law claims brought to seek invalidation of an employer's drug-testing program, including those founded on state privacy claims. *See Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 256 (4th Cir.1987); *Strachan v. Union Oil Co.*, 768 F.2d 703, 704–06 (5th Cir.1985); *Association of Western Pulp and Paper Workers v. Boise Cascade Corp.*, 644 F.Supp. 183, 186–87 (D.Or.1986). Although these cases involved state tort claims rather than state constitutional claims, the Supremacy Clause declares the primacy of federal law over state constitutional provisions as well as over state common and statutory law. *See* U.S. Const. art. VI, cl. 2.

We therefore affirm the district court's finding that section 301 preempts Local 246's state-law challenges to SCE's drug testing program, notwithstanding that its claims are based on rights guaranteed under the California Constitution. This holding makes it unnecessary for us to consider SCE's claims that Local 246's state-law claims are preempted because the San Onofre plant is located on a federal enclave or because the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011–2296 (1982 & Supp. III 1985), grants exclusive legislative power over the facility to the federal government.

The district court held that it had concurrent jurisdiction with the NLRB over Local 246's claim that SCE breached the collective bargaining agreement by instituting a unilateral change in terms and conditions of employment and by refusing to bargain over such changes. The misconduct alleged by Local 246 also would constitute unfair labor practices in violation of sections 8(a)(1) and 8(a)(5) of the NLRA.[4] *See*

29 U.S.C. § 158(a)(1) (1982); 29 U.S.C. § 158(a)(5) (1982). Indeed, Local 246's claim for breach of contract is based upon SCE's alleged violation of Article I of the collective bargaining agreement, which provided that "[t]he Company agrees to recognize the rights of employees as set forth in Section 7 of the National Labor Relations Act."

"When an activity is arguably subject to § 7 or § 8 of the Act, ... federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). However, district courts have concurrent jurisdiction with the Board in cases where an alleged unfair labor practice also violates a collective bargaining agreement. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962).

We find it unnecessary to determine whether the NLRA preempts Local 246's claims. "The usual rule in the field of labor law is that where administrative procedures have been instituted for the resolution of disputes between parties to a collectively bargained or other agreement, the courts will generally require the exhaustion of those procedures before exercising the jurisdiction they might otherwise have over disputes subject to resolution through said procedures." *Amato v. Bernard*, 618 F.2d 559, 566 (9th Cir.1980).

Federal labor policy places great weight upon ensuring the availability of grievance procedures as "a uniform and exclusive method for orderly settlement of employee grievances." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 617, 13 L.Ed.2d 580 (1965). "Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide

---

**4.** On September 8, 1987, the NLRB's Office of the General Counsel recommended that drug testing for current employees and job applicants be deemed a mandatory subject of bargaining under section 8(d) of the NLRA, 29 U.S.C. § 158(d) (1982). *See* Office of the General Counsel to the National Labor Relations Board, Memorandum GC 87–5 (Sept. 8, 1987). Because

we find that federal courts lack jurisdiction at this time to determine whether SCE has violated the collective bargaining agreement, we need not consider the issues whether the General Counsel's recommendation should be applied retroactively or whether SCE's existing drug-testing program permitted it to modify the program without bargaining.

for their solution in a way which will generally accord with the variant needs and desires of the parties." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, ... as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916.

██ Because Local 246 has not complied with available grievance procedures, the district court could not hear the union's claim for breach of the collective bargaining agreement even if it shares jurisdiction with the NLRB. Accordingly, we reverse the part of the district court's order declining to dismiss Local 246's claim for breach of contract.

██ We conclude that the district court erred in issuing a preliminary injunction against implementation of the drug-testing program. A preliminary injunction requiring an employer to preserve the status quo pending arbitration is improper absent either an express or implied-in-fact promise by the employer to do so. *See Amalgamated Transit Union v. Greyhound Lines, Inc.*, 550 F.2d 1237, 1238–39 (9th Cir.) *cert. denied*, 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977). SCE made no promise, either express or implied in fact, that it would preserve the status quo pending arbitration. In *Greyhound Lines*, we recognized that because an employer's altering the status quo generally will not interfere with the arbitral process, an agreement to submit disputes to arbitration "does not imply a duty on the part of the employer to preserve the status quo pending arbitration." *Id.* at 1238. Hence, arbitration of the dispute will be unaffected by the implementation of the drug-testing program, *see id.* at 1238–39, and there therefore is no need for the issuance of an injunction in aid of arbitration. Furthermore, "the situation can be restored sub-stantially to the status quo *ante* " if the union prevails on its breach of contract claims in arbitration. *Id.* at 1239. We therefore remand to the district court so that the preliminary injunction may be dissolved.

We affirm the part of the district court's order dismissing Local 246's claims that SCE's drug-testing program violates the California Constitution because the state causes of action are preempted by section 301. We reverse the part of the district court's order finding federal jurisdiction over Local 246's claims for breach of contract because Local 246 has failed to exhaust available grievance procedures. The Supreme Court's recent decision in *Lingle v. Norge Division of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), does not affect our holding. *See Laws v. CALMAT*, 852 F.2d 430, 434 n. 5 (9th Cir.1988). The case is remanded to the district court with instructions to dissolve the preliminary injunction pending resolution of the dispute through the grievance process.

AFFIRMED in part, REVERSED in part, and REMANDED.