**David STIKES, an individual, on behalf of himself and all other persons similarly situated, Plaintiff–Appellant,**

v.

**CHEVRON USA, INC., a Pennsylvania Corporation; and DOES 1 through 50, inclusive, Defendants–Appellees.**

No. 89–15208.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 20, 1990.

Decided Sept. 17, 1990.

Paul Alan Levy and Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., and Robert N. Jacobs, Los Angeles, Cal., for plaintiff-appellant.

C. Douglas Floyd, Pillsbury, Madison and Sutro, San Francisco, Cal., for defendants-appellees.

Before HUG and SCHROEDER, Circuit Judges, and JAMES A. VON DER HEYDT,* District Judge.

SCHROEDER, Circuit Judge:

Chevron, USA terminated David Stikes' employment with Chevron after Stikes refused to permit his employer to search his car that was parked in the company parking lot. Stikes appeals the district court's order denying his motions to remand and to abstain, and granting summary judgment in favor of his former employer, Chevron, USA. The district court held that Stikes' claims of violation of his right to privacy, wrongful discharge in violation of public policy, intentional infliction of emotional distress, and unfair business practices were completely preempted by section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185 (1988), and hence were properly removable to federal court

and subject to summary judgment on the merits. We affirm.

## FACTS AND PROCEEDINGS BELOW

Stikes was employed by Chevron as a maintenance worker from June 1983 until July 1987. The conditions of his employment were governed by a collective bargaining agreement (CBA) which recognized Chevron's right to manage, direct and determine its work force as well as to demote or discharge any employee for cause. The CBA also stressed the importance of safe work conditions and provided that Chevron would consider safety suggestions made by the Union and the employees and that the Union would encourage its members "to cooperate with the Safety Program."

In September of 1984, Chevron instituted a policy as part of its safety program requiring its employees to submit to random searches of their persons and property. Pursuant to this policy, on July 2, 1987, Chevron's security chief ordered Stikes to submit to a search of his private vehicle which was parked on company property. Stikes refused to submit to the search, whereupon Chevron discharged him.

Stikes filed a suit in state court alleging that Chevron was liable for (1) infringement of his right to privacy in violation of Article 1, section 1 of the California Constitution; (2) wrongful discharge in violation of public policy; (3) intentional infliction of emotional distress; and (4) unfair business practices. Chevron removed the action to federal district court. Stikes moved for remand on the theory that his complaint stated causes of action based solely on state law and that therefore no federal question jurisdiction existed.

The district court denied Stikes' motion on the ground that Stikes' state law claims were completely preempted by section 301 of the LMRA, 29 U.S.C. § 185, because the resolution of Stikes' right to privacy and attendant claims required interpretation of the CBA. Stikes also moved for abstention, asserting that the district court should

---

* Honorable James A. von der Heydt, Senior United States District Judge for the District of Alaska, sitting by designation.

await a determination by the California courts as to whether under California law, the right to privacy could be waived by a collective bargaining agreement. The district court denied this motion as well. The district court then granted Chevron's unopposed motion for summary judgment on the ground that Stikes' claims were preempted under section 301. This appeal followed.

## DISCUSSION

The principal issue before us is whether Stikes' cause of action for interference with his State of California constitutional right to privacy is completely preempted by section 301 of the LMRA and therefore removable to federal district court.

■ Ordinarily, a defendant may remove a suit to federal court only if the suit could have been brought there originally. 28 U.S.C. § 1441(a) (1988); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Jackson v. Southern California Gas Co.,* 881 F.2d 638, 641 (9th Cir.1989); *Hyles v. Mensing,* 849 F.2d 1213, 1215 (9th Cir.1988). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of [a plaintiff's complaint]." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429. A federal defense, including the defense of preemption, may not form the basis of federal jurisdiction, "even if both parties concede that the federal defense is the only question truly at issue." *Id.* 107 S.Ct. at 2430 (citations omitted); *see Oklahoma Tax Com'n v. Graham,* 489 U.S. 838, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989).

The complete preemption doctrine, however, provides an exception to the well-pleaded complaint rule. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Whitman v. Raley's, Inc.,* 886 F.2d 1177, 1180–81 (9th Cir.1989).; *Jackson,* 881 F.2d at 641. Under that doctrine

The pre-emptive force of a statute [may be] so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim....

*Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987) (footnote omitted)).

Section 301 of the LMRA is an example of a statute which has such a powerfully preclusive effect. *Caterpillar,* 107 S.Ct. at 2430; *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985); *Jackson,* 881 F.2d at 642. It confers jurisdiction in the district courts of the United States over "suits for violation of contracts between an employer and a labor organization representing employees...."[1] 29 U.S.C. § 185(a). Its preemptive force is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement. *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983).

Many suits by employees against employers are not in the form of suits for breach of the collective bargaining agreement, yet may nonetheless implicate provisions of the agreement. This has given rise to some thorny jurisdictional questions. *See generally* Note, *Preemption of State Law Claims After Lingle v. Norge,* 34 Vill.L. Rev. 1035, 1050–58, 1071–77 (1989) (authored by Michelle Smith Nofer).

■ During the past decade, the Supreme Court has handed down a number of decisions defining the scope of section 301's preemptive effect. At least two principles

---

**1.** Section 301(a) of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties.... 29 U.S.C. § 185(a).

have emerged. First, section 301 preempts state law claims which are founded on rights created by a collective bargaining agreement. *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2430; *Gulden v. Crown Zellerbach Corp.,* 890 F.2d 195, 198 (9th Cir. 1989); *see, e.g., United States v. Rawson,* — U.S. ——, 110 S.Ct. 1904, 1909–11, 109 L.Ed.2d 362 (1990); *International Brotherhood of Elec. Workers v. Hechler,* 481 U.S. 851, 861, 107 S.Ct. 2161, 2167, 95 L.Ed.2d 791 (1987); *Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. at 1915. Second, section 301 preempts state law claims which are " 'substantially dependent on analysis of a collective bargaining agreement.' " *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2430 (quoting *Hechler,* 481 U.S. at 859 n. 3, 107 S.Ct. at 2166–67 n. 3); *accord, Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 410, 108 S.Ct. 1877, 1881, 1883–84, 100 L.Ed.2d 410 (citations omitted); *Gulden,* 890 F.2d at 198.

In order to determine whether Stikes' state law claim of privacy substantially depends upon an interpretation of the collective bargaining agreement, we must examine the elements of that claim to ascertain if any of the elements require a construction of the agreement. *See Lingle,* 486 U.S. at 405–410, 108 S.Ct. at 1881–84; *Gulden,* 890 F.2d at 198–99; *Tellez v. Pacific Gas and Elec. Co., Inc.,* 817 F.2d 536, 539 (9th Cir.), *cert. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987); *see also, Sluder v. United Mine Workers of America,* 892 F.2d 549, 553 (7th Cir.1989); *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111, 116–119 (1st Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989). Two recent Ninth Circuit decisions, like this case, involve suits by an employee against an employer for violation of privacy interests protected by the California Constitution. In both cases we expressly held that a determination of a claim based on the California right to privacy would substantially depend upon an analysis of the collective bargaining agreement and would therefore be preempted. *Laws v. Calmat,* 852 F.2d 430 (9th Cir.1988); *Utility Workers of America v. Southern California Edison Co.,* 852 F.2d 1083,

1085–87 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1530, 103 L.Ed.2d 835 (1989). *Laws* and *Utility Workers* both involved challenges to an employer's imposition of a drug and alcohol testing program. In *Laws,* a plaintiff employee refused to submit to a urine test and was suspended. The employee alleged that the drug program and his subsequent suspension violated his California constitutional right to privacy. We found Laws' claim subject to removal from state court on preemption grounds. We reasoned that a drug and alcohol testing program is a working condition "whether or not it is specifically discussed in the CBA." *Laws,* 852 F.2d at 433. We further noted that Laws' state law claim arose out of his suspension, an issue covered by the collective bargaining agreement. *Id.* In *Utility Workers,* 852 F.2d at 1086, we considered whether the California Constitution created a nonnegotiable right to privacy such that resolution of the privacy claim might not involve the CBA. We concluded that "drug testing does not implicate the sort of 'nonnegotiable state law rights' that preclude preemption under section 301." *Id.* (citation omitted). Rather, "an employer's decision to institute a drug testing program is a proper subject for collective bargaining." *Id.* *Laws* and *Utility Workers* require us to find Stikes' privacy claim preempted.

Stikes asks us to revisit our *Laws* and *Utility Workers* decisions in light of the Supreme Court's recent holding in *Oklahoma Tax Commission,* 109 S.Ct. at 1519. That case involved a state's action against an Indian tribe to recover excise taxes. The tribe removed the case to federal district court, asserting federal question jurisdiction on the ground that the suit was barred by tribal sovereign immunity. The Supreme Court found the action not properly removable because the federal question appeared in the defense and not on the face of the plaintiff's well-pleaded complaint.

*Oklahoma* is inapposite to the case at bar because it does not involve an area of federal law subject to the complete preemption corollary to the well-pleaded complaint rule. Stikes argues that *Oklahoma* none-

theless requires a modification of *Laws* and *Utility Workers* because it relied upon the Supreme Court's prior holding in *Caterpillar*, a case which did involve an issue of section 301 preemption. *Caterpillar* held that an employee's state law claims were not subject to removal "even though an interpretation of the collective bargaining agreement might ultimately provide the employer a complete defense to the individual [state] claims...." *Id.* 109 S.Ct. at 1521 (citing *Caterpillar*, 482 U.S. at 396–98, 107 S.Ct. at 2431–32). The Court found removal inappropriate in *Caterpillar* because plaintiffs' claims in that case involved jobs outside the bargaining unit and were based on the argument that the collective bargaining agreement did not apply to plaintiffs at all. *Caterpillar*, 482 U.S. at 388–89, 394–95, 107 S.Ct. at 2427–28, 2430–31. In *Laws*, 852 F.2d at 433–34, we expressly considered the effect of *Caterpillar* upon removal of a claim based on California's constitutional right to privacy. Laws, like Stikes here, argued that the employer in that case could not remove a state privacy claim to federal court based on a federal defense of preemption. We rejected Laws' argument on the ground that unlike the claims of the employees in *Caterpillar* who asserted rights based upon individual employment contracts outside the scope of the collective bargaining agreement, Laws' right to privacy claim was not "wholly separate from the CBA" but rather was "inextricably intertwined" with it because it involved a working condition. *Id.* (citing *Allis Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912).

Stikes' right to privacy claim is inextricably intertwined with the collective bargaining agreement. This is because a violation of California's constitutional right to privacy requires both that an individual have a "personal and objectively reasonable expectation of privacy" and that the expectation "has been infringed by an unreasonable ... intrusion." *Alarcon v. Murphy*, 201 Cal.App.3d 1, 5, 248 Cal.Rptr. 26, 29 (Ct.App.1988); *see In re Deborah C.*, 30 Cal.3d 125, 137, 177 Cal.Rptr. 852, 635 P.2d 446 (1981); *Chico Feminist Women's Health Center v. Scully*, 208 Cal.App.3d

230, 240–42, 256 Cal.Rptr. 194, 199–200 (Ct. App.1989); *People v. Superior Court (Safeco Insur. Company)*, 164 Cal.App.3d 526, 540–42, 210 Cal.Rptr. 695, 703–04 (Ct. App.1985); *Armenta v. Superior Court of Santa Barbara County*, 61 Cal.App.3d 584, 588, 594, 132 Cal.Rptr. 586, 588, 592 (1976). *See also Flesh v. Board of Trustees of Joint School Dist. 2*, 786 P.2d 4, 8–9 (Mont.1990) (to "determine whether a privacy interest is protected under the [Montana] State Constitution, we apply a two-part test: (1) whether the person involved had a subjective or actual expectation of privacy; and, (2) whether society is willing to recognize that expectation as reasonable." (citations omitted)).

Here, the district court could not ascertain Stikes' expectations of privacy at the workplace without considering the conditions of his employment enumerated in the collective bargaining agreement. *See In re Deborah*, 30 Cal.3d at 137, 177 Cal.Rptr. 852, 635 P.2d 446 ("What constitutes a 'reasonable' expectation of privacy depends on the circumstances and is measured by common habits in the use of domestic and business properties." (citations omitted)). By the same token, it could not assess whether Chevron's search of the car constituted an unreasonable intrusion without understanding the scope of Chevron's powers provided for in the collective bargaining agreement.

Other circuits have similarly concluded that section 301 preempts state invasion of privacy claims. In *Liquid Carbonic*, 863 F.2d at 118, the First Circuit held that an employee's claim that his employer's drug testing program violated his statutory right to privacy depended upon whether the testing was reasonable in light of the circumstances. This necessitated an interpretation of the CBA because the CBA defined the dimensions of the employee's "cognizable expectation of privacy." *Id.* at 118–19. In *Kirby v. Alleghany Beverage Corp.*, 811 F.2d 253 (4th Cir.1987), an employee brought a state invasion of privacy claim against his employer based on his employer's search of his person and request to search his automobile. The

Fourth Circuit determined that the analysis of the employee's claim would require reference to the CBA to ascertain whether the employer's actions were reasonable in light of that agreement. *Id.* at 255–56. Thus, unlike the CBA in *Caterpillar,* the CBA here does not provide a defense to Stikes' invasion of privacy claim. Rather, it is part and parcel of the prima facie claim itself, subjecting that claim to federal jurisdiction.

Stikes next contends that the California right to privacy is not negotiable and cannot be affected by a collective bargaining agreement. We have expressly declined to construe California's privacy guarantee as a non-waivable right. *Utility Workers,* 852 F.2d at 1086. Stikes distinguishes that case on the ground that *Utility Workers* involved drug testing as opposed to a random search of an employee's automobile, suggesting that the privacy interests here are more compelling. The distinction cuts the other way. If anything, a urine analysis or similar search of a person's body constitutes a far greater intrusion of privacy than a car search. Furthermore, even if California courts were to deem the right to privacy nonnegotiable in the collective bargaining process, suits based upon a violation of that right might nonetheless fall within section 301's preemptive grip. As the Supreme Court explained in *Lingle*

> While it may be true that most state laws that are not pre-empted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption. It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be pre-empted by § 301.

486 U.S. at 407–08 n. 7, 108 S.Ct. at 1882 n. 7.

Stikes' privacy claim was completely preempted by section 301 and properly dismissed on the merits. Appellant's remaining claims of wrongful discharge, intentional infliction of emotional distress and unfair business practices are peripheral to the privacy claim. Stikes does not argue that they should be independently remanded if we agree with the district court and find the privacy claim completely preempted. *See Edelman v. Western Airlines, Inc.,* 892 F.2d 839, 844–45 (9th Cir.1989) (section 301 preempted the gravamen of plaintiff's complaint and therefore preempted parasitic claims dependent upon that claim as well).

██ Appellant's final contention on appeal is that the district court should have abstained from deciding the federal preemption issue under the Pullman Abstention Doctrine. The Pullman Abstention Doctrine prevents federal courts from unnecessarily deciding constitutional questions. *Railroad Comm. v. Pullman,* 312 U.S. 496, 499–500, 61 S.Ct. 643, 644–45, 85 L.Ed. 971 (1941). The question of section 301 preemption does not rise to the level of a constitutional question in abstention jurisprudence. *Cf. Knudsen Corp. v. Nevada State Dairy Comm.,* 676 F.2d 374, 377 (9th Cir.1982). *See generally* C. Wright, *The Law of Federal Courts* 303–308 (4th ed. 1983). Appellant nevertheless reasons that if the California courts were to deem the right to privacy nonnegotiable, the federal courts would not have to address the question of whether the LMRA preempts the privacy right. The right to privacy under California law, however, is based in major part upon the parties' reasonable expectations and these, of necessity, involve the working conditions agreed upon in the collective bargaining agreement. Thus, even if the California courts were to find the privacy right non-waiveable, the right is not absolute and its scope would involve consideration and possible interpretation of the collective bargaining agreement. Pullman Abstention, therefore, is not appropriate for this reason as well and the district court properly refused to abstain.

AFFIRMED.