**Herman R. DANCY, Jr., et al., Plaintiffs**

v.

**FINA OIL & CHEMICAL COMPANY, Defendant.**

**No. 1:96–CV 0196.**

United States District Court,
E.D. Texas,
Beaumont Division.

March 22, 1996.

Jill Swearingen–Chatelain, Provost & Um-
phrey, Beaumont, TX, for plaintiffs.

Durwood Douglas Crawford, Goins Under-kofler Crawford & Landon, Dallas, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

The Plaintiffs in this case originally filed suit against the Defendant in the 136th Judicial District, Jefferson County, Texas, alleging damages resulting from Fina's issuance of "Letters of Concern" ("letters") pursuant to an employee absenteeism program. The Plaintiffs argue that the publication of a list of all employees receiving such letters resulted in damages. Plaintiffs seek damages from the Defendant for intentional infliction of emotional distress and invasion of privacy. Defendants timely removed to this court on the basis of preemption under § 301 of the Labor Management Relations Act ("§ 301" and "LMRA"). This Court finds that Plaintiffs' intentional infliction of emotional distress and invasion of privacy claims are preempted by the LMRA and removal to this Court is proper.

### Background

The various Plaintiffs in this action contend that they were injured while employed by Fina and consequently filed workers' compensation claims. As a result of their injuries, the plaintiffs were absent from work for various lengths of time. Due to their history of absenteeism, the Plaintiffs were sent Letters of Concern by Fina in accordance with an employee absenteeism program which was not developed in conjunction with the union. A list of the employees sent such letters was compiled and Plaintiffs contend the list was distributed to "every employee that worked in the plant." Plaintiffs further assert that the list became known as the "hit list" and the publication of the list to other employees was highly embarrassing and humiliating. The Plaintiffs' claim intentional infliction of emotional distress and invasion of privacy resulting from the publication of the list.

Defendants assert that the Management Rights Clause[1] of the collective bargaining agreement ("CBA") between Fina and the union give Fina the right to develop and implement an employee absenteeism program. Defendants argue that because the program was within their rights, sending letters of concern and publishing a list of employees receiving such letters provides no basis for legal liability. Defendants further aver that because an interpretation of the CBA provision is necessary to resolve these claims, the case is removable to federal court.

### ANALYSIS

The sole issue before this court is whether Plaintiffs' well-pleaded complaint raises issues "arising under the Constitution, laws, or treaties of the United States" that entitle the Defendants to remove the case to federal court. *See* 28 U.S.C. §§ 1331, 1441(a).[2]

Section 1331 provides that: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988), aff'd, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). Significant federalism concerns require this court to strictly construe removal jurisdiction. *Willy*, 855 F.2d at 1164.

A federal question must appear on the face of the plaintiff's complaint for this court to entertain proper removal jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In general, removal jurisdiction is

---

1. The Management Rights Clause provides that, "Except to the extent expressly limited by any provisions of this Agreement, all regular and customary rights and functions of Management in the conduct of business are exclusively reserved to and vested in the Company."

2. 28 U.S.C. section 1441(a) states that: [a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

not satisfied by raising a federal defense. *Id.* at 393, 107 S.Ct. at 2430. One exception to this general rule applies to areas of federal law that completely preempt state law, such as controversies involving an interpretation of § 301 of the Labor Management Relations Act (LMRA). *Id.;* and *see Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

### Section 301 Preemption Generally

The Defendants assert that Plaintiffs' claims are properly removed because they are preempted by § 301 of the LMRA and as such are federal questions. Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

In *Lingle,* the Supreme Court held that § 301 preempts an application of state law "only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410, 423 (1988). Congress did not intend that § 301 should preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 219, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985). That the state court would have to decide precisely the same issue and analyze the same facts as would the arbitrator does not matter so long as resolving the state law claim without interpreting the CBA is possible. *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883, 100 L.Ed.2d at 421. The Court noted that in a typical case involving, for instance, "just cause" for discharge, a state court could resolve a discrimination or retaliatory discharge claim without interpreting the "just cause" language of the CBA. *Id.* at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423. In such instances, the state

law claim is "independent" of the CBA for preemption purposes. *Id.* at 410, 108 S.Ct. at 1883, 100 L.Ed.2d at 421.

The Court of Appeals for the Fifth Circuit has stated that § 301 preemption occurs when resolution of a dispute is " 'substantially dependent upon analysis of the terms' of the collective bargaining agreement." *Wells v. General Motors Corp.,* 881 F.2d 166, 173 (5th Cir.1989) (citing *Lueck,* 471 U.S. at 220, 105 S.Ct. at 1915, 85 L.Ed.2d 206), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990). A plaintiff's state law claims will not be preempted, even when they are "intertwined" with a CBA, so long as they are not "inextricably intertwined" with it. *Id.* at 175 n. 20; see *Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912, 85 L.Ed.2d 206.

■ It is quite common for confusion to exist about the inextricable nature of a claim when a defendant alleges that his actions were permissible under the CBA. However, the Fifth Circuit Court of Appeals has held that "either party may use the CBA to support the credibility of its claims" even though the claim is not preempted. *Jones v. Roadway Express, Inc.,* 931 F.2d 1086 (5th Cir. 1991), *reh'g denied,* 936 F.2d 789 (5th Cir. 1991). Essentially, this means that although the employers may defend against claims by arguing that their actions were authorized under the CBA and its rules, this fact does not transform the claim into one which requires an interpretation of the CBA. See *Anderson v. American Airlines, Inc.,* 2 F.3d 590, 596–97 (5th Cir.1993).

■ To determine if adjudicating the claim requires the interpretation of a CBA, a court is required under *Lingle* to analyze the elements of the tort at issue. *Lingle,* 486 U.S. at 406–07, 108 S.Ct. at 1881–82, 100 L.Ed.2d at 419–20. If the elements of the cause of action require an interpretation of the CBA, the plaintiff's claim is inextricably intertwined and the case is removable.

### Section 301 Preemption and Intentional Infliction of Emotional Distress

The Plaintiffs aver that the publication of a list of employees receiving a Letter of Concern resulted in intentional infliction of emo-

tional distress. The list was allegedly published to all employees. The Plaintiffs do not challenge Fina's right to publish the list to management but they do challenge the distribution of the list to "every employee that worked in the plant." *Plaintiff's Motion to Remand*, p. 2. Plaintiffs assert that their claims for intentional infliction of emotional distress are purely state law claims which are not preempted by federal labor law.

For the Plaintiffs to sustain their claim of intentional infliction of emotional distress under Texas law, they must prove that: (1) the defendants acted intentionally or recklessly; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' actions caused Plaintiffs emotional distress; and (4) Plaintiff's emotional distress was severe. *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 942 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)). Plaintiffs do not allege that any action on the part of the Defendants, other than the publication of the list to non-management Fina employees has caused emotional distress. They allege no instances of harassment, discrimination, physical abuse, or other conduct which would provide grounds for an emotional distress claim.

In several cases, the Court of Appeals for the Fifth Circuit analyzed claims for intentional infliction of emotional distress under the rubric of LMRA preemption and concluded that the determination whether the employer acted wrongfully required an analysis of the employer's obligations under the collective bargaining agreement. *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 636 (5th Cir.1994). (Relying in part on the Fourth Circuit's en banc decision in *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531 (4th Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992)); *See also, Baker v. Farmers Electric Coop.*, 34 F.3d 274 (5th Cir.1994); *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250 (5th Cir. 1990).

*Burgos* and *McCormick* reasoned that the plaintiff pursuing a claim for intentional infliction of emotional distress has the burden of proving wrongful conduct on the part of the defendant. The plaintiff must establish not that the defendant's conduct was wrongful in some abstract sense, but wrongful under the circumstances. *Burgos*, 20 F.3d at 636. Critically, the court stated that "the circumstances that must be considered in examining management's conduct are not merely factual, but contractual, and the collective bargaining agreement is a crucial component of these circumstances." *Id.* Similarly, *Baker* held that the determination of whether the defendant's conduct in reassigning an employee was extreme and outrageous turned on the particular management rights granted under the CBA. *Baker*, 34 F.3d at 280. Finally, in *Brown*, the Fifth Circuit Court of Appeals upheld a finding of preemption where the emotional distress claim turned on the circumstances under which Southwestern Bell could or could not discharge an employee. 901 F.2d at 1255–56. Simply put, if the employers conduct is arguably within the limits of the CBA, the court must necessarily interpret the CBA to determine the bounds of the employment relationship. This determination is necessary to assessing the extreme and outrageous nature of the employer's conduct and most courts hold that intentional infliction of emotional distress claims are preempted.

Plaintiffs must prove, as an element of their claim of intentional infliction of emotional distress, that the Defendants' actions in distributing the letter were extreme and outrageous. The terms of the CBA are relevant to this issue, because the Management Rights Clause of the CBA grants management residual rights which may cover the Fina's conduct in publishing the list. The Management Rights Clause of the CBA provides: "Except to the extent expressly limited by any provisions of this Agreement, all regular and customary rights and functions of Management · in the conduct of business are exclusively reserved to and vested in the Company." *Defendant's Opposition to Plaintiffs' Motion to Remand*, Exhibit 1 to Barnwell Affidavit. Whether or not Fina's conduct in publishing the list is extreme and outrageous will depend on the interpretation of this and possibly other provisions of the

CBA which dictate the relationship between the Plaintiffs and Fina.

Although the facts underlying the claims in various cases differs, at issue in each case is the authority of the employer, as set forth in a CBA, to take certain actions affecting the plaintiff's job. Because the terms of the CBA are relevant to the resolution of this state tort claim, § 301 preempts the claims.

### Section 301 Preemption and Invasion of Privacy

While other circuits have addressed the preemption of invasion of privacy claims, the Fifth Circuit has yet to decide the issue under the LMRA. Accordingly, the jurisprudence of other circuits is instructive.

 Under Texas law, a claim for intrusion upon the plaintiff's seclusion, solitude and into his private affairs requires that there be an intentional intrusion, upon the solitude or seclusion of another or his private affairs or concerns that is highly offensive to a reasonable person. *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.Civ.App.—Ft. Worth 1982, no writ). See also RESTATEMENT (SECOND) OF TORTS, sec. 652B (1977). This type of invasion of privacy is generally associated with either a physical invasion of a person's property or by eavesdropping on another's conversation with the aid of wiretaps, microphones or spying. *Gonzales v. Southwestern Bell Tel. Co.,* 555 S.W.2d 219 (Tex.Civ.App.—Corpus Christi 1977, no writ). See also RESTATEMENT (SECOND) OF TORTS, sec. 652B, comments b, c, and d (1977). The Plaintiffs in this case allege this form of invasion of privacy stemming from the publication of the list of employees who were sent Letters of Concern.

It is clear from a review of the invasion of privacy cases decided since *Lingle* that, as a general rule, invasion of privacy claims are preempted by § 301. *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176 (7th Cir.1993); *In re General Motors Corp.,* 3 F.3d 980 (6th Cir.1993); *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522 (10th Cir.1992); *Matter of Amoco Petroleum Additives Co.,* 964 F.2d 706 (7th Cir.1992); *Schlacter–Jones v. General Telephone of California,* 936 F.2d 435 (9th Cir.1991); *McCormick v. AT & T*

*Technologies, Inc.,* 934 F.2d 531 (4th Cir. 1991); *Stikes v. Chevron USA, Inc.,* 914 F.2d 1265 (9th Cir.1990); *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111 (1st Cir.1988); *Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133 (7th Cir.1987). By way of example, in the *Matter of Amoco Petroleum,* the Seventh Circuit held that an employee's state law claim for invasion of privacy caused by the employer's installation of video cameras in the locker room arose under § 301. 964 F.2d 706 (7th Cir.1992). Although the CBA did not expressly address the employer's right to install such cameras, the employer argued that the broad language in the management rights clause permitted the installation of the cameras.

*Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253 (4th Cir.1987), holds that a claim of invasion of privacy in the workplace necessarily rests on federal labor law. Although decided before *Lingle,* this opinion uses the same approach, expressly concluding that adjudication of the claim would require interpretation of the collective bargaining agreement. 811 F.2d at 256. *Stikes v. Chevron USA, Inc.,* 914 F.2d 1265 (9th Cir.1990), takes the same view of a claim that the employer violated a worker's privacy by demanding that the worker consent to a search of his car. As *Stikes* noted, state-law invasion-of-privacy claims depend on proof that the defendant invaded an objectively reasonable expectation of privacy. 914 F.2d at 1269. What expectations of privacy in the workplace are objectively reasonable depends on powers and duties specified in the collective bargaining agreement.

A series of drug testing cases reinforces the conclusion that state law invasion of privacy claims are preempted by § 301. Several courts have held that federal rather than state law governs employees' privacy-based objections to drug tests—and this is true despite whether or not the collective bargaining agreement expressly mentions drug tests. E.g., *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111 (1st Cir.1988); *Laws v. Calmat,* 852 F.2d 430 (9th Cir.1988); *Utility Workers v. Southern California Edison Co.,* 852 F.2d 1083, 1085–87 (9th Cir.1988). Cf. *Bolden v. Southeastern Pennsylvania Trans-*

*portation Authority,* 953 F.2d 807, 826–29 (3d Cir.1991) (en banc) (unions may compromise employees' privacy claims, including objections to drug tests).

█ In the present case, the Plaintiffs maintain that their claim for invasion of privacy does not depend on the terms of the CBA. They allege in their Motion to Remand that they "are not disputing Defendant's right to compile such [a] list or even to distribute this list to management. What forms the basis of the Plaintiffs' complaint is the widespread publication of the list to every employee that worked in the plant." *Plaintiffs' Motion to Remand,* p. 2. Defendants reply that the Management Rights Clause grants Fina broad discretion in the development and implementation of an employee absenteeism program. While the Plaintiffs concede that the CBA authorizes the compilation of the list, the compact is silent about the distribution of the list. Fina would argue that the subject is covered by the management-rights language because everything that is neither regulated nor forbidden by the collective bargaining agreement is committed to management's discretion by this residual clause. The determination about what rights the management had in establishing the program will be necessary in addressing the invasion of privacy claim. This determination will establish what the employee can consider to be the solitude or seclusion of an employee. In addition, whether the invasion is highly offensive to a reasonable person will depend on what level of privacy an employee could reasonably expect. Privacy in the workplace is an ordinary subject of bargaining and the extent of privacy is a condition of employment. Clearly, the resolution of the invasion of privacy claim depends upon the meaning of a collective-bargaining agreement.

For all of the above reasons, this Court believes that remand to the state court is not appropriate in this case and therefore, Plaintiffs' Motion to Remand is hereby DENIED.