209 F.3d 1122 (9th Cir. 2000)
 LLOYD W. CRAMER; DANIEL E. LIPICH, Plaintiffs-Appellants,
v.
CONSOLIDATED FREIGHTWAYS, INC., Defendant-Appellee.
GUILLERMO ALFARO, Plaintiff,
and
DENNIS R. BLEVINS; RAY R. CASIO; STEVE CUNNINGHAM; RICK DEWOODY; ALEJANDRO GARCIA; DAVID V. GARCIA; RAUL C. GARCIA; JAMES A. GRECO; BRUCE A. HARVEY; JOHN K. HATFIELD; ROBERT W. HATFIELD; LEE A. INGRAM; ZENO KING, JR.; JOHN L. LACROIX; GREGORY A. LANDAVAZO; MELVIN LEO LEWIS; ENRIQUE LOPEZ; HERBERT MARCUS; IGNACIO V. OCHOA; BRIAN K. PAGNE; MANUEL PARRA; JAMES A. PROITTE; CARLOS RIVERA; HAROLD JAMES TAYLOR, JR.; THOMAS A. SCOTT; DAVID W. STEPHENS; J.B. STEWART; ALFONSO WAGNER; LARRY A. WELLS; ROBERT P. WILLIAMS; ERIC J. WRIGHT; WILLIAM A. YESFORD; MIGUEL ABARAJAS; SANDRA RAY AMBROSE; GUILLERMO AMESOLA; ABELARDO APUAN; MICHAEL VINCENT ARBANAS; CARLOS ARGANDORA; JOSE ABRIERO; MARCARIO ACELLANO; FERNANDO AVILA; MICHAEL E. BANNAN; ARNOLD A. BARAJAS; ROBERT BARRAS; MIKE BARTLEY; DAVID BARTON; JAN K. BEBER; WILLIAM OTIS BEGGS; CRAIG ANTHONY BERLENE; PAUL EUGENE BOATWRIGHT; BRIGIDO BOLIVAR; RAYMOND BONIA; RICHARD BOON; ROGER J. BRASS; GARY BROOKS; MICHAEL D. BROWN; JOANNE BRUMMER; SCOTT BUBIER; EDUARDO S. CARDENAS; MANUEL CARDONA; MARIO CARILLO; HARRIS A. CARTER; RICHARD CENICEROS; JACK CLARK; KENNETH L. CLARK; FERNANDO A. CLAVIJO; ROBERT L. CLINTON; RICHARD CONTRERAS; RANCE D. COOPER; ANTHONY CORDERO; ARMANDO CORDERO; JOHN L. CORDERO; RUDY H. COUTHART; CHARLES DAVIDSON, II; THOMAS DERSGHY; PHILIP DIGENOVA; CHARLES DIRNER; JIMMY DIXON; AL DORAME; EDDIE SHEPHERD; CLIFFORD J. FELTON; MIKE FITZGERALD; JOSE LUIS FLORES; RAFAEL O. FLORES; ED FOOR; JERRY FRANCE; ALBERT ALEX FRANCO; RAMON B. FRANCO; MICHAEL GAMBINO; ANTHONY GAPDORA; ROBER T. GARCIA; DONALD K. GLOVER; DAVID P. GOMEZ; MANUEL E. GONZALES; GERALD W. GOODWIN; DEVIN JONATHAN GORDON;
JONATHAN J. GORDON; JERRY GOFORTH; BERNAL GREGETZ; JOSE GUTIERREZ; JESSE D. HALEY; JAMES HARPER, JR.; SANDRA HEATLEY; PATRICK L. HERON, JR.; RANDALL WILLIAM HOBBS; NARVELL E. HOOKS; STEVE HOPKINS; TIM HOSEA; GAYLE LYNN HAMPTON; JAMES HURLBURT; JOHN W. JACKSON; JAMES ROBINSON; WILLIAM JARRELL; ALFREDO JIMENEZ; GARY E. JOHNSON; PETER KARABAN; ROBERT M. KIRKLAND; LARRY RISSEL; CARY KNIGHT; ANNE M. KNUTZEN; PATRICK J. KNUTZEN; ERVIN KROLL; FRANK P. LAGUMINA; HERCLIO LEMUS; ELORIA REYES; RICHARD E. LUCERO; ENRIQUE MANCILLA; CLIFFORD E. MAPLES; GUILLERMO MARTIN; REGUIO MARTIN; GILBERT M. MARTINEZ; RONALD A. MATTHEWS; DAVID E. MAY; MICHAEL J. MCCARTHY; DON R. MCCLARY; WILLIAM R. MCFARLAND; SAUL A. MCKECHAN; P.L. MEDINA; PEDRO A. MONGE; ALFRED MONTOYA; ARTHUR MORA; MARCOS MORALES; ROY L. MCFOOT; DEWAYNE MORTENSEN, II; MARK MULHERN; OSCAR MUNOZ; JOHN MURRAY; RAYNO NORDUCCI; HECTOR OCHOA; JORGE OCHOA; MICHAEL O'NEAL; LUIS E. ORTEGA; GILBERT GEORGE ORTIZ; VICTOR PARKER; DAVID PERALES; ISIDRO PERALES; ROBERT PORTILLO; ROBIN J. QUIGLEY; JOSEPH R. QUILTY, II; ROBERT REYNOSO; BRYAN RICHARD; CARLOS OROZCO RIVAS; GILBERT C. RIVERA; HOWARD ROBINSON; AUDIAS RODRIGUEZ; HUGO RODRIGUEZ; RUBEN RODRIGUEZ; TOMAS A. RODRIGUEZ; JOHN ROJAS; JAVIER ROMAN; ARMANDO ROMERO; ROBERT A. ROSAS; EUGENE A. ROSE; FRANCISCO J. RUIZ; C.W. RYAN; CATHERINE SCHATZ; DENNIS SCHATZ; STEVEN SCHILLING; NORMAN W. SCHOOLCRAFT; ERNIE SCOLARI; JOHN P. SOROUSE; JOSEPH SELCHO; JAMES SHINN; NATHAN SHROPSHIRE; RICHARD F. SHUMWAY; DAVID MANUAL SIERRAS; DAVID H. SMITH, JR.; ROBERT P. SMITH; CLARENCE SATTERLAND; JAMES BOBBY L. STONE; ALEJANDRO TIRADO; FABRIZIO TORRES; BRIAN UNZICKER; FRANK VALDEZ; MARIO A. VASQUEZ, JR.; MARIO A. VASQUEZ, SR.; RICHARD J. VARGAS; ALEXANDER VILLA, JR.; GUADALUPE REYES WAGGONER; WAYMOND A. WALKER; ROBERT WELSH; WILLIAM M. WESTON, JR.; ROBERT FRITZ WESTREICHER; JUDY LEN WILSON; GARY WAYNE YATES; DENNA JEAN YASANIA; DONALD RAY YODER; LYLE ARCHIBALD; EWALD BARTH; LEROTY O. BELL; HENRY CAMACHO; NICK J. CARENDER; K.W. CARRITHERS; JOSE CASILLAS; ARMANDO CORONADO; RICHARD COTA; DONALD K. CRONK; RICHARD JOSEPH DIAZ; JACK E. DOBSON; FRANCISCO ESPARZA; JOSE C. FLORES; ERNEST W. FRICK; RUDY GOMEZ; JOSEPH GONZALES; MICHAEL GROOM; JOAQUIN HERNANDEZ; JOHN ALFRED HILL; TERRY L. JOHNSON; OSCAR H. MARTIN; ELY MCDONAGLE; FULTON L. MITCHELL; GRADY RICHARD NUTT; GILBERT ORTIZ, JR.; MICHAEL T. PAUCH; JEFFREY M. PHILLIPS; MICHAEL R. PRESTON; BILLY C. RATLEDGE; ALFRED G. RODRIGUEZ; GILBERT ROSALES; OLIVER SONJY; JOHN STURGES; DONALD F. WOODS; F. THOMAS THORNE; RONALD M. AUBERT; HARVEY GEORGE BEACH; PAUL EDWARD BECKER; HAROLD BURNLEY; KIM HARSHA; JOSEPH CHAVEZ; PAUL E. COX; JOSEPH DEFRANCIS; BILL JOE MCFARLAND; WILLIAM E. MULDOON; JOSE A. UDELL PETERSON; ANDREW SLAUGHTER; AMOS TAYLOR; JIM H. WILLOUGHBY; RICHARD ALVARADO; HENRY H. ANDRADE; GARY A. RAMIREZ; ARMAND S. RAMIREZ; MASAO SHOBE; NOBLE A. CARSON; ERIC G. FROMM; LUE G. GARY; RICHARD ANTHONY LEON; JAMES R. O'NEILL; JERRY STROTHER; TODD T. STEVENS, Plaintiffs-Appellants,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION, a Delaware corporation; CNF TRANSPORTATION, INC., a Delaware corporation, aka Consolidated Freightways, Inc.; MARK EPSTEIN, an individual; DOUGLAS SCHUSTER, an individual; DOE SECURITY INSTALLATION COMPANY, Defendants-Appellees.
CHARLES R. DAVIDSON, II; GUILLERMO ALFARO; DAVID FITZHUGH; STEVEN B. BUGARIAN; IGNACIO LAWTON; DREW WHEAT; DONALD STUBBLEFIELD, Plaintiffs,
and
THERESA HOFFMAN; MASAO SHOBE, Plaintiffs-Appellants,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION, a Delaware corporation, aka Consolidated Freightways Corporation of Delaware; CNF TRANSPORTATION, INC., a Delaware corporation, aka Consolidated Freightways; MARK EPSTEIN, an individual; DOUGLAS SCHUSTER, an individual, Defendants-Appellees.
 Nos. 98-55657, 98-56041, 98-56154
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 9, 2000
Filed April 26, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: Jay C. Horton (argued), William O. Humphreys, and Malena R. Leclair, Horton, Barbaro & Reilly, Santa Ana, California, for plaintiffs-appellants Cramer et al. Michael D. Myers, Christine Pollard, and Matthew L. Taylor (argued), Myers & Pollard, Claremont, California, for plaintiffs-appellants Alfaro et al. and Hoffman et al.
 Robert E. Mangels, Marc Marmaro, Louis Ann Fernandez (argued), and Neil O. Andrus, Jeffer, Mangels, Butler, and Marmaro, Los Angeles, California, for the defendants appellees.
 Appeals from the United States District Court for the Central District of California Irving Hill, District Judge, Presiding* D.C. No. CV-97-07860-IH CV-98-00331-LHM(ANx) D.C. No. CV-98-00332-LHM(ANx)
 Before: Diarmuid F. O'Scannlain,** Pamela Ann Rymer, and Raymond C. Fisher, Circuit Judges.
 OPINION
 RYMER, Circuit Judge:
 
 
 1
 These appeals raise the familiar issue of when state law claims by employees covered by a collective bargaining agreement are preempted.[1] They all arise out of the surreptitious videotaping of restrooms through two-way mirrors, an activity that is arguably criminal in California. Employees at the trucking terminal where this happened filed related actions seeking recovery from their employer, Consolidated Freightways Corporation of Delaware, for invasion of privacy (Cramer and Alfaro); emotional distress (Alfaro); and discharge in retaliation for their own conduct related to the surveillance (Hoffman). The district court held that all the claims in each action are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. S 185,[2] because determining whether privacy rights have been violated requires an interpretation and application of the collective bargaining agreement. The employees contend otherwise, primarily for the reason that parties to a collective bargaining agreement cannot negotiate for considerations that violate criminal statutes. Following a long line of authority in this circuit, we agree with the district court in Cramer and Alfaro that adjudication of these civil claims based on privacy rights depends on the reasonableness of the employees' expectations and this, in turn, depends on the extent to which they may have bargained away their privacy interests. Therefore these claims are preempted, whether or not the specific conduct at issue may also be subject to criminal prosecution. The same is true of Alfaro's claims for emotional distress; the employer's conduct is not outrageous just because a statutory prohibition may have been violated, rather it depends upon the relationship between the parties. Thus, we affirm both Cramer and Alfaro.
 
 
 2
 However, claims based upon retaliatory discharge in violation of public policy are different. Under California law, they turn on the employer's motivation -not the employees' expectations. Accordingly, we reverse Hoffman .
 
 
 3
 * Consolidated Freightways is a large trucking company whose drivers and non-supervisory employees at the Mira Loma, California trucking terminal are subject to a collective bargaining agreement between Consolidated and the International Brotherhood of Teamsters, Local No. 63. Article 26, Section 2 of the Master Agreement provides that"[t]he Employer may not use video cameras to discipline or discharge an employee for reasons other than theft of property or dishonesty" and stipulates to a procedure to be followed if video tapes are used to support discipline or discharge. Other provisions acknowledge concern about substance abuse, prescribe drug testing procedures, and establish a process for grieving disputes arising under the agreement.
 
 
 4
 Evidently as part of an effort to detect and deter the use of drugs by its drivers, Consolidated installed video cameras and audio listening devices behind two-way mirrors in the restrooms at the Mira Loma terminal.[3] Employees discovered the surveillance equipment in September 1997.
 
 
 5
 Local 63 filed a grievance on September 22, 1997, and on September 27 Lloyd Cramer, a truck driver employed at the Mira Loma terminal, brought a class action in the Superior Court for the State of California in Riverside County alleging invasion of privacy on behalf of all "individuals lawfully on the premises . . . who had a reasonable expectation of privacy while using defendants' restrooms." Another suit was filed in state court by Guillermo Alfaro (joined by 281 others), seeking damages for invasion of privacy as well as for infliction of emotional distress, and an injunction to stop Consolidated's use of the allegedly illegal devices. Consolidated removed both actions to federal district court, asserting that the claims fall within the preemptive reach of S 301.
 
 
 6
 Consolidated moved in both actions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure; conversely, Alfaro filed a motion to remand for lack of federal jurisdiction, in which Cramer joined. Various motions were filed with respect to class certification in Cramer, but the district court considered the remand and dismissal motions first. The court denied the motions to remand; granted Consolidated's motion to dismiss in Cramer and denied the request for certification as moot; and granted the motion to dismiss in Alfaro as to the 273 employees and remanded the claims of nine nonemployees to state court.
 
 
 7
 Meanwhile, Theresa Hoffman and Masao Shobe also filed an action in state court. Hoffman claimed that while at work, she witnessed installation of some of the surveillance devices and that she wasfired as part of a cover-up. As a "casual employee" under the collective bargaining agreement, Shobe regularly worked short stints for Consolidated at the Mira Loma terminal. Although he was not working at the time, he joined as a party in the Alfaro action. Thereafter, Shobe applied to be rehired but alleges that he was rejected because of his participation in the Alfaro suit. Both claim that installation of the secret cameras violated California Penal Code SS 632, 635, 647k and 653n as well as their constitutional rights of privacy under Article 1, Section 1 of the California Constitution, and that Consolidated's job actions were taken to conceal the existence of crimes in Hoffman's case, and in Shobe's, to punish him for filing a lawsuit to protect and enforce his constitutional privacy rights. Consolidated removed and moved to dismiss on grounds of preemption; Hoffman and Shobe in turn sought a remand. The district court found both claims preempted, and dismissed the action.
 
 
 8
 All parties have timely appealed.
 
 II
 Invasion of Privacy (Hoffman and Alfaro)
 
 9
 Cramer[4] and Alfaro argue that the LMRA cannot preempt a lawsuit by union employees who claim they are victims of illegal surveillance and eavesdropping activities by their employers. They point out that the LMRA only preempts state lawsuits which are "substantially dependent" on a CBA, see Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987), and that employees covered by a collective bargaining agreement may assert legal rights "independent" of the agreement. Id. at 396. "Independent" means that "resolution of the state-law claim does not require construing the collective bargaining agreement." See Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 407 (1988). Specifically relying on Allis-Chalmers, and Miller v. AT&T Network Sys., 850 F.2d 543 (9th Cir. 1988), Cramer and Alfaro submit that their state law claims are independent of the CBA because the collective bargaining agreement cannot, as a matter of law, authorize conduct that is illegal under state law. In their view, Consolidated's conduct was illegal and prohibited by at least four sections of the California Penal Code: S 653n,[5] which makes it a misdemeanor to install a two-way mirror in a bathroom; S 647(k),[6] which criminalizes viewing the interior of a bathroom;S 632,[7] which makes it illegal to eavesdropby means of electronic recording devices; and S 635,[8] which prohibits the possession of eavesdropping devices. As there is no possible interpretation of the CBA that would allow the criminal surveillance at issue in this case, Cramer and Alfaro maintain there will be no need to interpret the collective bargaining agreement in the course of the litigation.
 
 
 10
 Consolidated counters that no matter how the employees' privacy claim is cast, it cannot be determined without interpretation and application of the collective bargaining agreement, which specifically addresses the use of video surveillance and drug interdiction, because the employees allege (and must prove) that they reasonably expected to be free from video surveillance and that the surveillance undertaken unreasonably intruded on their reasonable expectations of privacy. Consolidated further contends that S 301 preemption does not turn on whether a privacy claim is based upon an alleged violation of a criminal statute, a constitutional provision, or some other source of substantive rights under state law but instead, depends upon whether the state claim can be resolved without consideration of the collective bargaining agreement. Finally, it submits, the general proposition that parties to a collective bargaining agreement cannot agree to something illegal under state law is largely irrelevant in this case, where the critical issue is whether Consolidated's alleged violation invaded the employees' reasonable expectations of privacy.
 
 
 11
 We do not write on a clean slate in this area. It is by now well-settled that Section 301 preempts state law claims which are founded on rights created by a collective bargaining agreement, or which are "substantially dependent on analysis of a collective bargaining agreement." Stikes v. Chevron U.S.A., Inc., 914 F.2d 1265, 1268 (9th Cir. 1990). More particularly, we have held in a long line of cases that employee suits for violation of privacy interests arising under California law are inextricably intertwined with the collective bargaining agreement. "This is because a violation of California's constitutional right to privacy requires both that an individual have a `personal and objectively reasonable expectation of privacy' and that the expectation `has been infringed by an unreasonable . . . intrusion.' " Id. at 1269 (quoting Alarcon v. Murphy, 248 Cal. Rptr. 26, 29 (Cal. Ct. App. 1988)). Thus, in Stikes, we confronted a union employee's claim for violation of his right to privacy on account of Chevron's policy requiring employees to submit to random searches of their persons and property. We concluded that the "district court could not ascertain Stikes' expectations of privacy at the workplace
 
 
 12
 without considering the conditions of his employment enumerated in the collective bargaining agreement." Id. at 1269. Before that, in Laws v. Calmat, 852 F.2d 430, 431-32 (9th Cir. 1988), and Utility Workers of America v. Southern California Edison Co., 852 F.2d 1083, 1085-87 (9th Cir. 1988), we held that state law privacy challenges to a union employer's drug and alcohol testing programs are substantially dependent upon the collective bargaining agreement, whether or not specifically discussed in the agreement, because a drug or alcohol program is a working condition and the conditions of a union employee's employment are governed by the collective bargaining agreement. Most recently, we revisited whether claims for invasion of privacy rights arising out of an employer's drug testing program were preempted in Schlacter-Jones v. General Telephone of California , 936 F.2d 435 (9th Cir. 1991). Again holding they were, we reasoned that a collective bargaining agreement governs the working conditions of employment, a testing program is a working conditionwhether or not it is specifically discussed, and "[w]hen a working condition such as drug testing is subject to bargaining, and the employee's claim is rooted in the expectations of the parties, determining liability will necessarily involve contract interpretation and the claim will be preempted." Id. at 441.
 
 
 13
 Cramer and Alfaro contend that we need not follow this line of authority because restroom surveillance is different from drug testing in that drug testing is not illegal in California whereas it is illegal to install a two-way mirror in a bathroom. See Cal. Penal Code S 653n. We cannot agree. While the level of culpability and the consequences may be different, the claim for relief is not; here as in the random search and drug-testing cases, the employees complain of an invasion of privacy contrary to their rights under the California Constitution. As we recognized in Stikes, under California law plaintiffs asserting an invasion of privacy claim must show that they had a personal and objectively reasonable expectation of privacy that was infringed by an unreasonable intrusion. Stikes, 914 F.2d at 1269. This depends on the "deal struck between labor and management." Schlacter-Jones, 936 F.2d at 441. The reason is that consent is normally a defense to a privacy action.[9] As the California Supreme Court articulated the point in Hill v. National Collegiate Athletic Ass'n, 26 Cal. Rptr.2d 834, 849 (Cal. 1994):
 
 
 14
 [T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant. If voluntary consent is present, a defendant's conduct will rarely be deemed "highly offensive to a reasonable person" so as to justify tort liability.
 
 
 15
 Further,
 
 
 16
 [i]n determining the " `offensiveness' " of an invasion of a privacy interest, common law courts consider, among other things: "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."
 
 
 17
 Id. at 850 (quoting Miller v. National Broadcasting Co., 187 Cal. App.3d 1463, 1483-84, 232 Cal. Rptr. 668, 679 (Cal. Ct. App. 1986)). Thus, in this case as in the case of employer search or drug testing programs that we have previously considered, the reasonableness of the employees' expectations of privacy will depend upon the level of management oversight allowed in the collective bargaining agreement and the extent to which this particular surveillance exceeds what Cramer and Alfaro could reasonably expect.[10]
 
 
 18
 They argue that this cannot be so for several reasons directly related to the illegality of the surveillance activities. First, Cramer and Alfaro emphasize the Supreme Court's statement in Allis-Chalmers that "S 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." Allis-Chalmers, 471 U.S. at 212. They maintain that criminal conduct is, by definition, outrageous, see Galvez v. Kuhn, 933 F.2d 773, 780 (9th Cir. 1991), and cannot be a condition that it is possible for a collective bargaining agreement to condone. While the argument has considerable force, it ultimately fails to save their claim because the civil right to privacy, regardless of source, can be waived for the reasons we have already explained. As the Court went on to explain the difference between obligations that are "independent" of a labor contract from those that are not:
 
 
 19
 In extending the pre-emptive effect of S 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.
 
 
 20
 Therefore, state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements.
 
 
 21
 Allis-Chalmers, 471 U.S. at 212-13 (footnote omitted). This is precisely the situation here, as privacy rights can be altered or waived under California law and must be considered in context. See Hill, 26 Cal. Rptr.2d at 850. No one suggests that the subject of surveillance is an improper subject for collective bargaining. Cf. Utility Workers, 852 F.2d at 1086 (noting that drug testing is proper subject for collective bargaining and does not implicate the sort of "nonnegotiable state-law rights" that Allis-Chalmers indicates might preclude preemption); Schlacter-Jones, 936 F.2d at 441 (noting that "the question is not solely whether a state law claim is`nonnegotiable'; it is whether it is `independent' of the collective bargaining agreement"). Thus, the extent to which the collective bargaining agreement and the relationship between the parties in the workplace allow for surveillance will inevitably inform the decision about how reasonable the employees' expectations were that it would not occur as it did.
 
 
 22
 Galvez represents quite a different situation. There, the employee sued for damages for an assault. Being assaulted by a supervisor is not only outrageous, it is non-waivable. Further, Galvez's claim could be resolved without interpreting the collective bargaining agreement because liability for the assault turned entirely on the employer's intent. Unlike these cases, the outcome in Galvez in no way depended on the reasonableness of the employee's expectations.
 
 
 23
 The same is true of other cases upon which Cramer and Alfaro rely. Miller, Jineno v. Mobil Oil Corp., 66 F.3d 1514 (9th Cir. 1995), Ramirez v. Fox Television Station, Inc., 998 F.2d 743 (9th Cir. 1993), and Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283 (9th Cir. 1989), all involve claims by a union employee arising out of alleged discrimination by the employer contrary to state law. In this context we have held that when a state construes its discrimination statutes to rely on standards of discriminatory discharge that are independent of any standard of reasonable treatment set forth in the collective bargaining agreement, then termination of employment allegedly in violation of those statutory standards can be resolved under those standards without reference to the collective bargaining agreement. In other words, a Miller-type case only raises a factual dispute under an established state standard; such cases can be fully determined by deciding if the employer intended to discriminate. Unlike these cases, the California "standard" for privacy assumes that it can be altered by agreement. Because it can be, it plainly is not a "nonnegotiable,independent state-law right" under Allis Chalmers. As we recognized in Miller,"[t]he concept `nonnegotiable' is clear. A right is nonnegotiable if the state law does not permit it to be waived, alienated, or altered by private agreement." Miller, 850 F.2d at 546. Given the negotiable right at issue here, there is no basis for concluding that a different analysis applies to a privacy claim founded on arguably illegal, by contrast with legal but also invasive, activities.
 
 
 24
 Next, Cramer and Alfaro submit that California Penal Code SS 653n and 647(k) flatly ban surveillance through two way mirrors in bathrooms regardless of whether there is an expectation of privacy. Whether or not this is so for purposes of criminal prosecution, there is no question that the civil tort on which they proceed in this case does turn on the existence of a reasonable expectation of privacy. Alternatively, they contend that California case law interpreting S 653n is clear that the expectation of privacy that people have in a restroom is reasonable as a matter of law. They point to People v. Metcalf, 98 Cal. Rptr. 925, 927 (Cal. App. 1971), in which the court held that "the enactment of [Penal Code ] section 653n enunciates a public policy against clandestine observation of public restrooms and renders it reasonable for users thereof to expect that their privacy will not be surreptitiously violated," and to People v. Triggs, 106 Cal. Rptr. 408, 414 (Cal. 1973), overruled on other grounds People v. Lilienthal, 150 Cal. Rptr. 910, 912 n.4 (Cal. 1978), and Young v. Superior Court of Tulare County, 129 Cal.Rptr. 422, 425 (Cal. Ct. App. 1976), which also indicate that the expectation of privacy a person has when he enters a restroom is reasonable. However, these are Fourth Amendment cases in which a person accused of criminal conduct occurring in a public restroom has challenged the use of evidence obtained through surreptitious surveillance on the footing that it was an unreasonable search of an area in which he had a reasonable expectation of privacy. See also In re Deborah C., 177 Cal. Rptr. 852, 858 (Cal. 1981) (prosecution for theft based on fitting room surveillance). We are aware of no California authority interpreting S 653n to apply to employees who are parties to a collective bargaining agreement, or applying the constitutional right of privacy in the context of surveillance other than in Hill. Hill expressly conditions the right to privacy on consent and circumstances. Accordingly, while S 653n undoubtedly accords with a person's reasonable expectations of privacy in general -and probably with the expectations of Consolidated's employees -we cannot say that it absolutely does without examining the extent to which surveillance, which the collective bargaining agreement assumes will occur, is conducted at the terminal with the employees' knowledge and consent.
 
 
 25
 Additionally, Cramer and Alfaro argue that their actions are not preempted under the test for preemption we adopted in Miller and applied in Jimeno. In deciding whether Miller's discrimination claim was preempted we considered
 
 
 26
 (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract.
 
 
 27
 Miller, 850 F.2d at 548 (footnote omitted). For reasons we have already discussed, none of these factors cuts in favor of non-preemption of a privacy claim.
 
 
 28
 Finally, Cramer and Alfaro suggest that we should not hold their claims preempted because to do so would give employers license to violate the criminal laws without recourse. We fail to see how, as employers can be criminally prosecuted for violations of S 653n, and will surely lose in the grievance process itself if, as the employees here contend, surveillance has in factbeen conducted without authority. Our decision in no way sanctions what Consolidated did; it merely prescribes the forum and the form in which the dispute must go forward. Accordingly, the privacy claims are preempted, and were properly dismissed.
 
 III
 Emotional Distress (Alfaro)
 
 29
 Alfaro asserts additional causes of action for the intentional and negligent infliction of emotional distress. In effect these are "parasite" claims that track the principal claim for invasion of privacy. We therefore address them summarily, as for essentially the same reasons, they, too, are preempted.
 
 
 30
 To demonstrate intentional infliction of emotional distress, a plaintiff must show that the conduct was "extreme and outrageous," Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (applying California law), " `exceed[ing] all bounds of that usually tolerated in civilized society.' " Id. at 1455 (quoting Davidson v. Westminster, 185 Cal. Rptr. 252, 259 (Cal. 1982)). Whether the employees consented to surveillance affects the extent to which the surveillance about which Alfaro complains is "outrageous." See Sariakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999) (under California law "determining whether an employer's conduct is outrageous requires an interpretation of the terms of the CBA . . ."); see also Miller, 850 F.2d at 551 (construing Oregon law, but noting that outrageousness could depend upon the collective bargaining agreement and that "we cannot assume that the employer's behavior was outrageous for purposes of an emotional distress claim just because the employer may have violated a statutory prohibition against discrimination").
 
 
 31
 The tort of negligent infliction of emotional distress is simply a negligence claim alleging that the defendant breached a duty to protect the plaintiff's mental well-being. See Potter v. Firestone Tire & Rubber Co. 25 Cal. Rptr.2d 550, 562 (Cal. 1993) ("[T]here is no independent tort of negligent infliction of emotional distress"); Burgess v. Superior Court, 9 Cal. Rptr.2d 615, 618 (Cal. 1992) ("We have repeatedly recognized the negligent causing of emotional distress is not an independent tort, but the tort of negligence.") (internal quotations and alterations omitted). For the same reason that resort to the collective bargaining agreement is required to adjudicate Alfaro's claim for intentional infliction of emotional distress, it is necessary to resolve the negligence claim: the extent to which the employees consented to surveillance is a factor in determining whether Consolidated had a duty not to be surveillant in the restrooms. Alfaro argues that we have repeatedly held that outrageous and illegal conduct is outside the terms of a collective bargaining agreement, citing Galvez as an example. However, as we have discussed, an assault such as happened in Galvez is neither more nor less outrageous depending upon the conditions governing conduct in the workplace, whereas the outrageousness of the conduct here does depend on the degree of surveillance contemplated through the collective bargaining agreement.
 
 
 32
 Accordingly, Alfaro's claims for emotional distress are preempted.[11]
 
 IV
 
 33
 Discharge in Violation of Public Policy (Hoffman)
 
 
 34
 The gist of Hoffman's claim is that she was preemptively fired in an attempt to keep her from reporting illegal surveillance activity to law enforcement officials. Her theory is that whistleblowers are protected from retaliation by statute in California, see Cal. Labor Code S 1102.5(b),[12] and that California courts have held that terminations in violation of S 1102.5 give rise to a cause of action for wrongful termination in violation of public policy. See, e.g., Garcia v. Rockwell Int'l, 232 Cal.Rptr. 490 (Cal. App. 1987) (public policy forbids retaliation by employer against employee who disclosed information regarding employer's violation of law to government agency), abrogated on other grounds, Gantt v. Sentry Ins., 4 Cal. Rptr.2d 874 (Cal. 1992). She points out that the conduct she witnessed is criminalized by Cal. Penal Code SS 653n, 647(k), 632, and 635, and that privacy is explicitly protected in the California Constitution. Shobe rests his claim that he was not rehired in retaliation for being a party in the Alfaro litigation on the right to bring a lawsuit alleging violation of his privacy rights. Both argue that it will be unnecessary to interpret the collective bargaining agreement because the issue of whether Consolidated fired Hoffman to cover-up its criminal acts, and refused to rehire Shobe because of his legal action, is strictly a factual inquiry under state law.
 
 
 35
 Consolidated's position is that because an essential element of all "public policy" wrongful termination claims is that the employer's conduct must have violated some fundamental public policy, and the violation upon which Hoffman and Shobe rely is the alleged invasion of their privacy rights, they must establish that Consolidated in fact violated the statutory or constitutional provisions protecting the right to privacy. This Consolidated believes they cannot do without interpreting the collective bargaining agreement. If this were the issue -that is, if the claim could be made out only if the employees first prove that Consolidated in fact violated their privacy rights -then this case would be exactly like Cramer and Alfaro. However, the focus here is different: "[A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his `reasonably based suspicions' of illegal activity." Green v. Ralee Engineering Co., 78 Cal.Rptr.2d 16, 29 (Cal. 1998). Put another way, Hoffman and Shobe do not need to show that their own privacy rights were actually violated (which would depend upon the reasonableness of their expectations), rather that their claim for retaliatory wrongful termination is predicated on important public policy -which they allege is privacy.
 
 
 36
 Under California law, "[a]part from the terms of an express or implied employment contract, an employer has no right to terminate employment for a reason that contravenes fundamental public policy as expressed in a constitutional or statutory provision." Turner v. Anheuser-Busch, Inc., 32 Cal.Rptr.2d 223, 231 (Cal. 1994). To state a cause of action for wrongful discharge in violation of fundamental public policy, an employee must prove that his dismissal violated a policy that is fundamental, beneficial for the public, and embodied in statute or constitutional provision."Tort claims for wrongful discharge typically arise when an employer retaliates against an employee for `(1) refusing to violate a statute . . . [,] (2) performing a statutory obligation . . . [,] (3) exercising a statutory right or privilege . . .[, or] (4) reporting an alleged violation of a statute of public importance." Id. at 234 (quoting Gantt v. Sentry Ins., 4 Cal. Rptr.2d 874, 878 (Cal. 1992)). Thus the cause of action turns on why the employer took the actionit did, and the existence of a source of public policy to which the employee's claim is "tethered." Gantt, 4 Cal. Rptr.2d at 881.
 
 
 37
 Consolidated argues that public policy wrongful discharge claims must be based upon a fundamental policy that is not subject to revision through agreement of private parties (as privacy rights are), see Green, 78 Cal. Rptr.2d at 21 (discussing genesis of requirement that Tameny[13] claim implicate public policy); and that there can be no viable public policy claim based upon privacy rights because they may be altered by agreement. However, it seems to us that both points have to do with whether a viable cause of action is stated under California law, which is an issue that the federal courts cannot reach without jurisdiction.[14] The only question for us to decide is whether the collective bargaining agreement will have to be
 
 
 38
 construed in the course of litigating this action. We think not, for if Consolidated is correct that a public policy which can be altered by agreement is not the kind of public policy upon which a wrongful discharge claim may be based, a state court can make that determination with respect to California's policy on privacy simply by looking to state law. Thus, Consolidated's reliance on Stikes, Laws, Utility Workers, and Schlacter-Jones, each of which involves a job action taken as a result of a search that the employee later contends invaded his privacy rights, is misplaced. Instead, this case is closer to Lingle, where an employee covered under a collective bargaining agreement brought an action for retaliatory discharge for filing a workers' compensation claim, and the Court held that the state claims were not preempted because their resolution turns on the employer's motivation in discharging the employee -not on interpretation of the agreement. Lingle, 486 U.S. at 407.
 
 
 39
 In sum, whereas the claims for invasion of privacy in Cramer and Alfaro rest on the expectations of the parties, the Hoffman claims for retaliatory wrongful discharge rest on Consolidated's motivation in firing Hoffman and not rehiring Shobe. See Schlacter-Jones, 936 F.2d at 441 (contrasting a Lingle claim that centers on the motivation of the employer with a privacy claim which rests "primarily on the expectations of the parties and the powers" of the employer). This can be determined without reference to the collective bargaining agreement. Accordingly, neither Hoffman's nor Shobe's claim is preempted. We therefore reverse dismissal and remand with instructions for Hoffman to be remanded to the Superior Court for Riverside County.
 
 
 40
 AFFIRMED as to Cramer and Alfaro; REVERSED AND REMANDED as to Hoffman.
 
 
 
 Notes:
 
 
 *
 These actions were assigned to Hon. Irving Hill, who entered judgment in Cramer v. Consolidated Freightways, Inc., CV 97-7860-IH, No. 98-56154. Alfaro v. Consolidated Freightways Corp., SA CV 98-331, No. 98-56041, and Davidson v. Consolidated Freightways Corp. (Hoffman), SA CV 98-332-LMG, No. 98-56154, were reassigned following Judge Hill's death in March 1998 to Hon. Linda H. McLaughlin.
 
 
 **
 Judge O'Scannlain was drawn to replace Judge Wiggins. He has read the briefs, reviewed the record, and listened to the oral argument tapes.
 
 
 [1]
 Cramer v. Consolidated Freightways, Inc., No. 98-55657, and Alfaro v. Consolidated Freightways Corp., No. 98-56041, were consolidated in the district court and for calendaring purposes on appeal. We consider the invasion of privacy claim that is common to both Cramer and Alfaro in Part II, and the emotional distress claim and other statutory claims raised only in Alfaro in Part III. We also heard argument on the appeal in a related case, Hoffman v. Consolidated Freightways, No. 98-56154, at the same time. Counsels' cooperation in presenting a coordinated argument was helpful and appreciated by the court. The issues raised in Hoffman are slightly different, as the claims are for retaliatory discharge in violation of public policy. We address these claims in Part IV.
 
 
 [2]
 The claims of several non-employees in Alfaro were remanded to state court and are not at issue on this appeal.
 
 
 [3]
 The parties appear to differ on whether the surveillance was entirely of the common areas, but the dispute is not material to our decision.
 
 
 [4]
 Cramer preliminarily contends that federal jurisdiction cannot exist because his complaint does not mention an employer/employee relationship. However, these facts were evident in his request for class certification and were, in any event, properly before the court through Consolidated's petition for removal. See Olguin v. Inspiration Cons. Copper Co., 740 F.2d 1468, 1473 (9th Cir. 1984) (court may look beyond facts pleaded in complaint to ascertain facts that would appear in a "well pleaded" complaint), overruled on other grounds , Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985).
 
 
 [5]
 Any person who installs or who maintains after April 1, 1970, any two-way mirror permitting observation of any restroom, toilet, bathroom, washroom, shower, locker room, fitting room, motel room, or hotel room, is guilty of a misdemeanor.
 Cal. Penal Code S 653n.
 
 
 [6]
 Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:
 (K) Anyone who looks through a hole or opening, into, or otherwise views, by means of an instrumentality, including [a] . . . camera, . . . the interior of a bathroom . . . with the intent to invade the privacy of a person or persons inside.
 Cal. Penal Code S 647(k).
 
 
 [7]
 Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, . . . shall be punished . . . .
 Cal. Penal Code S 632(a).
 
 
 [8]
 Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another . . . shall be punished . . . .
 Cal. Penal Code S 635(a).
 
 
 [9]
 Cal. Penal Code S 653n, upon which Cramer and Alfaro principally rely, does not provide a private cause of action for invasion of privacy. Thus they must proceed on a general tort claim for invasion of privacy under the California Constitution, Article 1, Section 1. While civil remedies are provided for violations of Penal Code SS 632 and 635, S 632 explicitly hinges on the absence of consent. Section 637.2, which provides the private cause of action for violations of Section 635, requires proof that the plaintiff was "injured" by the eavesdropping equipment, which in turn also depends on consent. See Cal. Penal Code S 632; People v. Canard, 65 Cal. Rptr. 15, 29 (Cal. Ct. App. 1967).
 
 
 [10]
 Faced with a somewhat similar situation, where eight female workers complained they had been subjected to video surveillance in the locker room in violation of their right to privacy, the Seventh Circuit deemed the action to arise under S 301 because the employer had a non-frivolous argument that this kind of surveillance was implicitly authorized by the management rights clause of the CBA. See Brazinski v. AMOCO Petroleum Additives Co., 6 F.3d 1176 (7th Cir. 1993), earlier opinion, In re AMOCO Petroleum Additives Co., 964 F.2d 706 (7th Cir. 1992). However, there is no indication that the surveillance AMOCO conducted was prohibited by the state's criminal laws, so it does not speak directly to the point before us.
 
 
 [11]
 Although Alfaro appears also to allege causes of action for violation of Cal. Penal Code S 635, which criminalizes the possession of eavesdropping equipment, and Cal. Penal Code S 632, which prohibits eavesdropping on confidential communications, he does not argue these claims separately. We therefore deem them abandoned on appeal but note that, in any event, consent is a defense.
 
 
 [12]
 Section 1102.5(b) provides:
 No employer shall retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute.
 Cal. Labor Code S 1102.5(b).
 
 
 [13]
 Tameny v. Atlantic Richfield Co., 164 Cal.Rptr. 839 (Cal. 1980) (holding that at-will employees may recover tort damages from employers if they can show they were discharged in contravention of fundamental public policy).
 
 
 [14]
 The same is true of Consolidated's further argument that Hoffman's reliance on S 1102.5 of the Labor Code is misplaced. Whether it is or isn't is a question that goes to the merits (or lack thereof) of her claim, not to whether interpretation of the collective bargaining agreement is required.
 
 
 FISHER, Circuit Judge, dissenting in part:
 
 41
 There was . . . no way of knowing whether you were being watched at any given moment. . . . It was even conceivable that they watched everybody all the time. . . . You had to live -did live, from habit that became instinct -in the assumption that every sound you made was overheard, and, except in darkness, every movement scrutinized.
 
 
 42
 George Orwell, 1984 6-7 (Signet Classic 1992) (1949).
 
 
 43
 In this era of diminished privacy, where television transforms to reality what used to be considered fiction, see, e.g., Edmund L. Andrews, Europe's `Reality' TV: Chains and Big Brother, N.Y. Times, April11, 2000, at A4 (describing a television game show called "Big Brother" for which contestants "are sealed for 100 days in a house where cameras and microphones record them 24 hours a day"), perhaps one should not be troubled by the blatant invasion of privacy at issue in this case. But I simply cannot agree that federal labor law intends to preempt states from protecting their citizens -even those working under collective bargaining agreements -from the kind of bathroom spying secretly and unilaterally employed by Consolidated Freightways, Inc.
 
 
 44
 Consolidated's clandestine surveillance of its employees and others using cameras hidden behind two-way mirrors was criminal conduct, in clear violation of California law. The California Penal Code unambiguously prohibits installing two-way mirrors in restrooms, see Cal. Penal Code S 653n, and bars using a camera to look through a hole or opening into a restroom, see id. S 647(k)(1). Although the majority describes Consolidated's conduct as "arguably criminal in California," maj. op. at 4491, there is nothing "arguable" about the criminal nature and impropriety of Consolidated's actions.
 
 
 45
 The Supreme Court has explicitly stated that: "Clearly, S 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985). Nevertheless, the majority finds all of the Cramer and Alfaro plaintiffs' claims to be preempted byS 301, even though (1) the collective bargaining agreement ("CBA") in question does not discuss -even implicitly -surreptitious surveillance of restrooms[1] and (2) if the CBA did contain such provisions, those provisions would be void as violations of California criminal law, see 1 B.E. Witkin, Summary of California Law, Contracts SS 430-31, at 386-88 (9th ed. 1987). In my view, it defies logic to suggest that a court must interpret a CBA to determine whether the parties' agreement permits illegal conduct. Therefore, I respectfully dissent from Parts II and III of the majority opinion to the extent the majority finds the plaintiffs' claims to be completely preempted.
 
 
 46
 ************
 
 
 47
 Preemption of an employee's state tort claim turns on whether that claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contracts." Allis-Chalmers, 471 U.S. at 213 (emphasis added). The majority quotes Miller v. AT&T Network Systems, 850 F.2d 543, 546 (9th Cir. 1988), for the proposition that "[a] right is nonnegotiable if the state law does not permit it to be waived, alienated, or altered by private agreement." Maj. op. at 4501 (internal quotation marks omitted). The majority then finds that "[g]iven the negotiable right at issue here, there is no basis for concluding that a different analysis applies to a privacy claim founded on arguably illegal, by contrast with legal but also invasive, activities. " Id. The majority's conclusion that the plaintiffs' right to be free from two-way mirror observation was "negotiable" (and, therefore, that there is no principled basis upon which to distinguish such claims based on illegal conduct from those in which the conduct is less offensive) lies at the heart of my disagreement with its analysis.
 
 
 48
 It is true that we generally regard California privacy claims as involving negotiable rights that are subject toS 301 preemption. See, e.g., Stikes v. Chevron USA, Inc., 914 F.2d 1265, 1270 (9th Cir. 1990). As the majority suggests, this is because "consent is normally a defense to a privacy action." Maj. op. at ___ (emphasis added). However, I do not believe this general rule supports the majority's conclusion that privacy claims must always be preempted.
 
 
 49
 The various privacy cases cited by the majority are not only distinguishable, they also do not stand for the proposition that every privacy claim will be preempted by S 301. Most of the cases relied upon by the majority involve an employer's right to institute mandatory drug testing in the workplace. See Schlacter-Jones v. General Tel., 936 F.2d 435, 437 (9th Cir. 1991) (employee terminated following positive drug test); Laws v. Calmat, 852 F.2d 430, 433 (9th Cir. 1988) (employee suspended for refusing to submit to a urine test); Utility Workers of Am. v. Southern Cal. Edison Co., 852 F.2d 1083, 1085 (9th Cir. 1988) (challenge to employer's institution of random drug testing program under which employees receive one day's notice of selection for testing). Our decisions in these cases were based on an underlying determination that "an employee's right to be free from mandatory drug testing is properly a subject of collective bargaining," Schlacter-Jones, 936 F.2d at 442, rather than on a blanket rule that all privacy claims necessarily require interpretation of a CBA. As we noted recently in Balcorta v. Twentieth Century-Fox Film Corp., _______ F.3d _______, 2000 WL 350562 (9th Cir. 2000):
 
 
 50
 Dicta from a few of our earlier complete preemption cases suggested that the doctrine extends much further than the "interpretation" test allows. In a few cases dealing with state constitutional privacy claims, we suggested that any claim that is "a properly negotiable subject for purposes of collective bargaining" is completely preempted. More recently, however, we have made it clear that the outcome in those cases did not turn on the expansive dicta about complete preemption. . . . [B]oth the Supreme Court and this court have rejected the broad swath of complete preemption that the dicta in Laws and Utility Workers of America would suggest.
 
 
 51
 Id. at ___ n.10 (quoting Utility Workers of Am., 852 F.2d at 1086) (citations omitted). Unlike the conduct at issue here, drug testing is neither surreptitious activity on the part of an employer nor illegal under state law; therefore, as Balcorta suggests, there is no reason for us to bind ourselves to the expansive language of our previous drug testing cases when, as here, it is inappropriate to do so.
 
 
 52
 The majority's reliance on California state court precedent to support its broad holding is also misplaced. Hill v. National Collegiate Athletic Association, 26 Cal. Rptr. 2d 834 (Cal. 1994), was written in the context of drug testing of college athletes, whose activities by their nature "involve[ ] close regulation and scrutiny of [their] physical fitness and bodily condition," and who regularly undergo physical examinations, including urinalysis, and "frequently disrobe in the presence of one another . . . in locker room settings where private bodily parts are readily observable by others of the same sex." Id. at 860.[2] The court also emphasized the openness and consensual nature of the testing. See id. "Thus, athletes have complete information regarding the NCAA's drug testing program and are afforded the opportunity to consent or refuse before they may be selected for testing."[3] Id. at 860-61.
 
 
 53
 Nothing in Hill suggests that someone who is surreptitiously spied upon in a bathroom by criminal means has anything other than a reasonable expectation of privacy as a matter of law. Hill simply doesnot create the blanket rule inferred by the majority, see maj. op. at 4502 ("Hill expressly conditions the right to privacy on consent and circumstances."), or stand for the proposition that, regardless of the context or the nature of the "surveillance" in a particular case, consent is always a question of fact (thereby requiring interpretation of a CBA, if one exists). Quite the contrary: the supreme court explained that "[w]hether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court," and the availability of consent as a defense will turn on whether it is "appropriate in view of the nature of the claim and the relief requested." Hill, 26 Cal. Rptr. 2d at 859. Significantly, the court noted that the Hill plaintiffs had not contended that the NCAA's conduct was "contrary to law or public policy." Id. at 861.
 
 
 54
 In contrast to the conduct at issue in Hill, the California Supreme Court has described S 653n as "express[ing] a legislative policy against `clandestine observation of public restrooms,' rendering it `reasonable for users thereof to expect that their privacy will not be surreptitiously violated.' " In re Deborah C., 177 Cal. Rptr. 852, 858 n.9 (Cal. 1981) (quoting People v. Metcalf, 98 Cal. Rptr. 925, 927 (Cal. Ct. App. 1971)). I do not believe the California Supreme Court, under the reasoning of Hill or otherwise, has precluded this court from concluding on the facts presented here that the plaintiffs as a matter of law had a reasonable expectation of privacy -that they would not be videotaped in Consolidated's restrooms through two-way mirrors -and to that extent their privacy claims are not preempted by S 301.[4]
 
 
 55
 I also disagree with the majority's analysis of Alfaro's emotional distress claims. This court's preemption decisions do not establish a per se rule that such claims must be preempted by S 301. Compare Sariakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999) (claim of emotional distress resulting from mandatory drug testing is preempted), with Galvez v. Kuhn, 933 F.2d 773, 779-80 (9th Cir. 1991) (claim of emotional distress resulting from assault not preempted because "[c]ompliance with the CBA . . . cannot temper the potential outrageousness of the conduct"). Miller, upon which the majority relies, discussed how the factual distinctions underlying such claims can affect preemption analysis:
 
 
 56
 [Emotional distress] claims may not be preempted if the particular offending behavior has been explicitly prohibited by mandatory statute or judicial decree, and the state holds violation of that rule in all circumstances sufficiently outrageous to support an emotional distress claim. For example, if a plaintiff alleges that an employer's criminal behavior inflicted extreme emotional distress, the emotional distress claim need not be preempted. The behavior could be found sufficiently outrageous to permit recovery without regard to whether the behavior might be permitted under the CBA. Its outrageousness would be clear from the state's decision to make the behavior criminal.
 
 
 57
 Miller, 850 F.2d at 550 n. 5 (emphasis added).
 
 
 58
 This case is analogous to Galvez v. Kuhn, in which we held that an employee's claim for intentional infliction of emotional distress was not preempted by S 301. Applying the reasoning set forth in Miller and Allis-Chalmers, Galvez examined the nature of the conduct underlying the employee's basic tort claim, rather than just the claim itself. See id. at 779. In particular,we noted in Galvez that "appellees' alleged assault and battery is made criminal by state law. " Id. at 780.
 
 
 59
 Thus, the majority's restrictive consideration of just the basic tort claims alleged by the plaintiffs is erroneous. I believe we must also look to the specific conduct underlying each tort claim (in this case, installation of two-way mirrors in restrooms and the use of cameras to view the restrooms through holes hidden behind those mirrors) to determine whether that conduct affects our analysis.
 
 
 60
 To do so is consistent with Supreme Court precedent, which supports the proposition that S 301 does not preempt claims based on conduct that is per se illegal under state law. See Allis-Chalmers, 471 U.S. at 212 ("Clearly, S 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law."). The majority does not adequately explain how its holding can be reconciled with Allis-Chalmers. Contrary to the majority's suggestion, the facts of this case are not "precisely the situation" that the Court described as being subject to preemption in Allis-Chalmers, maj. op. at 4500; rather, as the language quoted above makes clear, this case involves the very situation the Court believed would not be preempted.
 
 
 61
 The majority recognizes that the plaintiffs' argument, grounded as it is in Allis-Chalmers and Galvez, has "considerable force," but concludes that this case is distinguishable. Maj. op. at 4499-4501. In the majority's view, the emotional distress claim in Galvez was based on conduct that "is neither more nor less outrageous depending upon the conditions governing conduct in the workplace" while the same claim in this case "depend[s] on the degree of surveillance contemplated [by the CBA]." Maj. op. at 4505.
 
 
 62
 I disagree. Such a distinction cannot be supported by precedent or the facts of this case.
 
 
 63
 In particular, I find unpersuasive the majority's argument that the plaintiffs' claims, which are in part based on conduct that is per se illegal (in other words, not subject to waiver by consent or otherwise by the citizens of California), are completely preempted because "[n]o one suggests that the subject of surveillance is an improper subject for collective bargaining." Id. at 1131. The majority paints with too broad a brush. Cf. Balcorta, 209 F.3d at 1130 n. 10 (noting that a claim is not preempted simply because the subject of the claim is appropriate for negotiation). Comparison to the underlying facts in Galvez is instructive. Galvez's alleged assault occurred when his foreman sped up a conveyor, thereby forcing Galvez to attempt to remove and stack the cartons on the conveyor belt at a rate that resulted in injury. Galvez, 933 F.2d at 774-75. In Galvez, therefore, we could have concluded that the claim for emotional distress was preempted because workplace safety and operating procedures are both proper subjects for collective bargaining. We did not reach that conclusion because the particular conduct at issue was criminal in nature and was not a proper subject for collective bargaining. Likewise, although it is certainly true that surveillance is a common, appropriate subject for collective bargaining, the illegal, clandestine surveillance of restrooms through holes hidden behind two-way mirrors is most definitely not. This is true even if such surveillance is conducted for the laudable purpose of deterring and detecting drug use by truck drivers; regardless of Consolidated's objective, the means utilized by the company were illegal.
 
 
 64
 For these reasons, I would hold that the plaintiffs' privacy and emotional distress claims are not preempted byS 301, to the extent those claims stem from Consolidated's criminal use of hidden cameras and two-way mirrors to observe its employees in restrooms.[5] I respectfully dissent from the portions of the majority's opinion, set forth in Parts II and III, that establish that California tort claims are preempted by S 301 of the LMRA even if the State of California deems the underlying conduct to constitute criminal activity . As the Supreme Court explained in Allis-Chalmers,"it would be inconsistent with congressional intent under [S 301] to preempt state rules that proscribe conduct . . . independent of a labor contract." Allis-Chalmers, 471 U.S. at 212. I would take heed of the Court's observation, thereby avoiding the unfortunate result of the majority's opinion: unnecessary and improper interference with a state's ability to define the contours of its criminal laws and to protect its citizens from violations of those laws.
 
 
 
 Notes:
 
 
 [1]
 The CBA provision relied upon by Consolidated to support preemption is entitled "Use of Video Cameras for Discipline and Discharge." Although this provision implicitly suggests that videotaping might occur, it does not discuss or permit the use of surreptitious video surveillance techniques, much less the use of two-way mirrors to accomplish such surveillance.
 
 
 [2]
 Presumably, Consolidated's bathroom videotapes were viewable by anyone, regardless of the sex of the viewer or the viewed.
 
 
 [3]
 Here, the plaintiffs were never told about the hidden cameras or two way mirrors, and were never given the opportunity to consent to bathroom surveillance. At most, they knew some kind of legal video surveillance might occur.
 
 
 [4]
 Justice George's separate concurrence and dissent strongly supports this conclusion:
 [E]ven if an employer discloses before hiring an employee that it intends to engage in visual surveillance of the employee restrooms and requires all employees to consent to such surveillance as a condition of employment, a state constitutional privacy challenge to such conduct would not necessarily founder on the ground that, in view of the explicit warnings and consent, the employees had no reasonable expectation of privacy.
 Hill, 26 Cal. Rptr. 2d at 878 (George, J., concurring and dissenting).
 
 
 [5]
 The plaintiffs' privacy and emotional distress claims could proceed under SS 647k and 653n even though the other bases of their claims are preempted. Cf. Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1413 (9th Cir. 1992) (finding that a portion of a claim was not preempted even though the remainder of the claim was preempted); Perugini v. Safeway Stores, Inc., 935 F.2d 1083, 1088 (9th Cir. 1991) (applying preemption analysis to distinctive "segments" of the same claim and reaching different conclusions as to each segment).